# CHARLESTOWN.

THE FARMER'S BANK, &c. *v.* SMITH & CO., *et als.*

SNYDER *v.* SAME.

THE BARNESVILLE MAN'F'G CO. *v.* SAME.

Submitted June 9, 1884.—Decided September 26, 1885.

S. E. V. & B.  in September, 1874, formed a partnership under the name of J. S. S. & Co. for the purpose of manufacturing plows,

wagons, &c. All its capital was borrowed or purchased on the credit and in the name of said firm. The members of the firm with one other about six months afterwards were incorporated and organized as The West Fairmont Plow, Wagon and Manufacturing Company, for the purpose of carrying on the same business with a nominal capital of $2,150,00, consisting only of the patent right of a worthless plow owned by them in certain shares. Subsequently other parties became owners of certain shares of said stock, but under all these changes the said business was carried on exclusively in the name of J. S. S. & Co. From the time said firm was established until it was so incorporated, and thereafter until it ceased to transact business, all of its transactions, including debts incurred, and contracts and notes made by and with it, were incurred and made in the name of said firm. While it carried on said business many debts were incurred by it, which remained unpaid. The firm of J. S. S. & Co. being insolvent said E. S. and another member thereof fraudulently conveyed away large amounts of real estate to avoid the payment of said debts. In suits brought by creditors of the firm to set aside these fraudulent deeds and to charge the lands so conveyed with payment of their debts, the defendant E. made defence, denying that any such partnership ever existed, or that he was or ever had been a member thereof; or that he was, or could be held liable as a partner in such firm, and claiming, that said corporation was alone liable for the payment of the plaintiffs' debts. HELD :

I. That the circumstances in proof in these causes clearly established the existence of a general partnership unlimited as to its duration between E. S. V. & B. for the purpose of carrying on said business.

II. That even if no such partnership in the name of J. S. S. & Co. had ever in fact existed between said E. S. V. and B., or between them and others associated with them, yet under the circumstances in proof in these causes, they were liable as general partners to said several plaintiffs in the same manner and to the same extent, as if a general partnership for the purpose aforesaid had existed between them.

III. That this liability continued, notwithstanding the fact, that said E S. V. and B. and K. had been incorporated and organized as a corporation for the purpose of carrying on the same business ; and

IV. That the debts due to the several plaintiffs from the firm of J. S. S. & Co. having been established, and their priorities ascertained and declared, and said deeds as to the said debts set aside as fraudulent and void, the circuit court did not err in decreeing said lands to be sold to satisfy said debts without having first settled the accounts of said partners as between themselves and said partnership.

The opinion of the Court sets out the facts of the case.

*Fontaine Smith, U. N. Arnett, Jr.* and *J. A. Haggerty* for appellant.

*James Morrow, Jr.* for appellee.

WOODS, JUDGE:

The Farmer's Bank of Fairmont on February 20, 1879; Jacob Snyder, on February 27, 1879, and the Barnesville Manufacturing Company on July 30, 1879, instituted in the circuit court of Marion county, their several chancery suits against John S. Smith, Andrew McCray, James R. McCray, John W. Everhart, Edwin D. King, Charles W. Scott and A. S. Straight, partners doing business under the firm name of J. S. Smith & Co., Dudley E. Miller, Alexina F. Everheart, John W. Floyd, Joseph M. Fleming, Elihu Atha, Joseph R. Prickett, George V. Millan, Caroline M. Millan, William F. Martin, John M. Harden, William Vandervort, James W. Boggess, Martha L. McCray and Francis M. McCray, to set aside as fraudulent and void as to them, fourteen conveyances of real estate made by members of the said firm of J. S. Smith & Co., to certain of their co-defendents, and to enforce payment of large debts alleged to be due the several plaintiffs, from the firm of J. S Smith & Co., by a sale of the lands conveyed to said alleged fraudulent grantees. The allegations contained in these bills were substantially the same, as was also the relief sought by them. The substance of these allegations was, that the firm of "J. S. Smith & Co. was indebted to the Farmer's Bank of Fairmont in the sum of $1,567.19, the aggregate amount of five negotiable notes particularly described in the bill, made by the firm of J. S. Smith & Co., endorsed to the said bank as follows: The first by the defendants E. D. King, J. W. Everhart and J. S. Smith; the second, third and fifth, by the defendants Smith, Everhart, King and Andrew McCray; and the fourth by said Smith, Everhart and McCray, payable respectively, on December 2d and 19th, 1878, March 1st, 21st and 23d, 1879, all of which remained unpaid; that they were in like manner indebted to the plaintiff, Jacob Snyder, in the sum of $897.40, the aggregate of three negotiable notes made to him by the

firm of J. S. Smith & Co., dated September 20, 1878, payable respectively in sixty, ninety and one hundred and twenty days thereafter, all of which remained unpaid; and also to the Barnesville Manufacturing Company in the sum of $31.70, with interest and costs, being the amount of a judgment recovered by it, against said firm of J. S. Smith & Co., before a justice of said county, which was recorded on the judgment-lien docket therein, and remaining unpaid constituted a valid judgment lien on the lands sought to be sold in the said first named two causes.   Other creditors of said firm who had recovered large judgments against it, were set out in the bills and said judgment-creditors were made defendants. It was further alleged that all of said several debts were incurred by said firm for moneys borrowed, materials purchased, used and consumed by it in the conduct and management of its business, and the same was so obtained and purchased upon the strength of the individual liability and responsibility of the members of said firm, and especially upon the responsibility of said Smith, Everhart and Andrew McCray, who were known to be men owning large amounts of valuable unincumbered real estate, while the others were equally well known to be men owning but little property; that the said firm of J. S. Smith & Co. on October 1, 1878, and for a long time before that date was unable, out of its social assets to pay its debts, and that to avoid the payment of these debts, the said John S. Smith, John W. Everhart and Andrew McCray, voluntarily and without consideration valuable in law, and for the purpose of hindering, delaying and defrauding said creditors, executed said several deeds to the grantees named therein, who accepted the same with full knowledge of this fraudulent intent, and prayed a cancellation of said fraudulent deeds and a sale of the lands, thereby pretended to be conveyed to satisfy said demands, and for orders of attachment in said first named causes, and for general relief. The order of attachment in the cause first brought, was issued February 21, 1879, and levied the same day on the lands owned by said firm, and on the lands of John W. Everhart, John S. Smith and Andrew McCray.   Smith demurred to the first two bills (which were properly overruled.)   The defendants, John S. Smith, John W. Everhart, Andrew McCray,

William Vandervort, John W. Floyd, Joseph M. Fleming and M. Harden answered the bills filed by the said bank, and John S. Smith and Vandervort answered all the bills. Others of the defendants also answered, not necessary to be further noticed. General replications were filed to all the answers. Nearly every material allegation of the bill, showing the existence of the said firm of J. S. Smith & Co., the justice and validity of the said demands, and that the said conveyances were in fact voluntary and made without valuable consideration, were admitted to be true and the answers of Smith admitted without qualification that the deed made by him to Dudley E. Miller, dated January 8, 1879, pretending to convey to him 146 acres for the sum of $2,500.00, in hand paid, was voluntary and made without consideration, and that the several notes mentioned in the bills were made by J. S. Smith & Co. and endorsed as stated therein. The answers of Everhart and Andrew McCray, denied that they ever were at any time members or partners of the firm of J. S. Smith & Co., composed of J. S. Smith, Andrew McCray, Edwin D. King, James R. McCray, Charles W. Scott and A. S. Straight, and that there ever were any contracts made or debts incurred in the firm name of J. S. Smith & Co. by their approbation, knowledge or consent, and by way of further defence they averred that, John S. Smith, James W. Boggess, Edward D. King and William Vandervort, John W. Everhart, some time during the year 1875 agreed to become and were duly incorporated as a corporation by the name of the "West Fairmont Plow, Wagon and Manufacturing Company," for the purpose of manufacturing plows, wagons, carriages, buggies, carts, drays, wheel-barrows and other farming implements; that the capital stock of the company was $2,150.00, with the privilege of increasing the same to $20,000.00, in shares of $50.00 each; that said corporators owned the stock as follows: Smith, Boggess and Everhart, each ten shares; Vandervort eleven, and King two shares; that the corporation was organized by the election of directors and other officers, and carried on the business of manufacturing plows, wagons, &c., from that time until it suspended in 1878; that said several promissory notes were given for materials furnished said corporation used in its

legitimate business, and that the complainants knew at the time the notes were executed that they were given for such material so used, and that they knew they were dealing with a body corporate, and for that reason they required the notes to be endorsed by John S. Smith, Andrew McCray and Edwin D. King.

On November 12, 1879, these three causes were consolidated, and by consent of all the parties by their counsel, they were referred to a special comissioner directing him to report the following matters:

"1.—Said commissioner shall state and make full settlement of the joint or partnership business and affairs of the defendants J. S. Smith & Co., and the accounts of its treasurer or other receiving or disbursing agent or agents, and shall by his report show distinctly what assets, real and personal, belong to said partnership or joint concern, including all sums if any, which any member or members of said partnership or joint concern owe to the same on any and all accounts.

2.—Said commissioner shall ascertain and report all the debts due and owing by said firm or joint concern, with the nature and amount of each, and the date from which each of such debts bears interest, and the order in which the same should be satisfied, and showing the date of all judgments recovered or other legal proceedings which may have been taken for the collection of any of said debts, and the present condition of the same, including costs incurred in such proceedings.

3.—Said commissioner shall ascertain and report what real estate or other property belongs to each of the defendants composing the said joint concern or firm of J. S. Smith & Co.

4.—What real estate or other property has been conveyed by the said firm, and also by each of its members, since September 30, 1878, and upon what consideration and with what intent such conveyances, and each of them, were made, and the value of each parcel of property so conveyed.

"5.—Any other matter deemed pertinent by the commissioner or desired by any of the parties."

The commissioner returned his report whereby it appeared,

that in September, 1874, the defendants, John S. Smith, John W. Everhart, William Vandervort and James W. Boggess, who were the owners of a patent-right for a plow, which proved to be utterly worthless, formed a co-partnership under the name and style of J. S. Smith & Co., composed of said four persons, for the purpose of manufacturing plows, wagons, carriages and buggies in Marion county ; that no capital was put into the firm except said patent right; that on September 22, 1874, the firm purchased a small parcel of land containing about three acres on which their workshops were erected, and on February 10, 1875, the same parties with said Edwin D. King were incorporated as stated and organized as the "West Fairmont Plow, Wagon and Manufacturing Company," with a nominal capital of $2,150.00, owned as before stated, which on May 8, 1875, they increased to sixty-four shares of $50.00 each, of which John S. Smith and Everhart each owned sixteen shares, Vandervort eighteen, and King four and Boggess ten shares; that on June 10, 1875, Boggess transferred five shares of his stock to Andrew McCray and the remaining five shares to James R. McCray; that on December 18, 1875, Vandervort transferred his eighteen shares to Edwin D. King, and the stock of the corporation was then held by the defendants, John S. Smith, Everhart, Andrew and James R. McCray and King until September 1, 1878; Andrew and James McCray, Everhart and King each transferred one share of their stock to the defendant, C. W. Scott, and that on October 4, 1878, Andrew McCray transferred his remaining four shares to the defendant, Straight, and so the commissioner among other things reported "that the said defendants were and are all equally liable as partners to the creditors of the said firm, but that as between themselves they are partners with unequal interests in such partnership, the interest of the partners as between themselves being in proprortion to the amount of stock held by each of them in said pretended corporation." Having ascertained the debts due from and chargeable to the several firms, bearing the common firm of J. S. Smith & Co., to each of their several creditors, he ascertained the real estate owned by each member of the firm, on October 1, 1878, and the land conveyed by him since that date, and the pri-

orities of the debts chargeable thereon, and also that the deed dated January 8, 1879, made by Smith to Dudley E. Miller as well as that made by A. McCray to Elihu Atha were fraudulent and void; and that the parcel ot forty and one-half acres of land which had been fraudulently conveyed by Everhart to Joseph M. Fleming, had since the institution of these suits, been re-conveyed to Everhart, and formed part of the lands reported as then belonging to him, but the commissioner was unable to, and he did not report, the state ot the accounts between the different members of said firm. To this report the defendant Everhart filed four exceptions, in substance as follows:

1.—Because he reported that John S. Smith, the secretary and treasurer of the *"concern"* was not liable for $2,570.13 the apparent difference between its sales and expenses.

2.—Because it is contrary to the evidence adduced before the commissioner.

3.—Because he failed to report what part of the indebtedness of said *firm* of *J. S. Smith & Co.* is a lien on the lands conveyed by Wm. Vandervort, by deed dated August 16, 1879.

4.—And because he reported, *"the concern"* liable as a firm, not as a corporation and that Everhart and Andrew McCray were members of said firm.

The circuit court had by former decrees entered by consent sold all the real estate of the firm of J. S. Smith & Co. for $380.00 and applied the same to the payment ot expenses of sale and the costs of these suits. On July 29, 1881 the court entered its decree, overruling said exceptions to the report of said commissioner and among other things adjudged, ordered and decreed, that the deed made by the defendant J. S. Smith to Dudley E. Miller bearing date January 8, 1879, conveying to him 146 acres for the pretended consideration of $2,500.00; and the deed made by the defendant Andrew McCray to Elihu Atha dated October 1, 1878 conveying to him 57 acres, were declared fraudulent and void as to all the creditors of the firm of J. S. Smith & Co. whose debts were contracted while McCray and Everhart were members thereof, but not as to those who are creditors of said firm

otherwise constituted, nor otherwise, nor farther than shall be necessary for the purpose of this decree, and that as the other parcels found to have been conveyed in fraud of creditors, have been reconveyed to said grantors since the institution of these suits, no order is made concerning the last named fraudulent deeds; and it was further adjudged, ordered and decreed, that the firm of J. S. Smith & Co. is liable to its creditors as a partnership, and that as between themselves, the members thereof, were liable as partners having unequal interests in the joint concern; that said partnership was at successive periods constituted of different persons named in said decree; that said successive partnerships incurred debts which remain unpaid, which are ascertained and declared by said decree; the social creditors are entitled to resort first to the social assets of said successive firms for the payment of their debts, and next to subject the individual property of the several members of such partnerships, so far as may be necessary for the payment of their debts, all of which are therein ascertained and decreed for, and that in case default be made in the payment thereof for twenty days, special commissioners appointed for the purpose were directed to sell said lands in the order, and on the terms prescribed in said decree.

From this decree the defendants John S. Smith and John W. Everhart appealed to this Court.

The appellants have assigned ten errors in said decree, which we have carefully considered. The unusual length of this record, covering as it does 700 printed pages, much of which has been found to be entirely unnecessary, has imposed useless labor on this Court. The defendants James M. Boggess, Edward D. King, James R. McCray, Charles W. Scott and A. S. Straight, alleged in the bills to have been members of the firm of J. S. Smith & Co., failed to appear and answer the bills and the same as to them were taken for confessed. None of the defendants who answered the bills pretended to deny the justice or validity of the demands of the several plaintiffs, as alleged in their bills. The defendants John W. Everhart and Andrew McCray alone denied their liability for these debts, not upon the grounds they were unjust or invalid, but upon the ground that no such

partnership as that of J. S. Smith & Co., as set out in the bills, ever in fact existed, or contracted these debts, and that neither of them was ever in fact a member of any such firm ; and averring that said debts had been contracted by "The West Fairmont Plow, Wagon and Manufacturing Company," a corporation created and existing under and by virtue of the laws of West Virginia, the capital stock of which consisted of forty-three shares of the par value of $50.00 each, of which Everhart, John S. Smith and James M. Boggess, each owned ten shares, Wm. Vandervort, eleven, and E. D. King two shares, which was duly organized by the election of officers, &c., and that the several debts claimed by the plaintiffs as due from the firm of J. S. Smith & Co. were debts due from said corporation, and that its corporate property alone was liable to pay the same.

The first error assigned was in overruling the demurrers of the defendant Smith. No particular ground of demurrer was assigned upon the argument thereof in the court below, and upon examination thereof here, we have been unable to discover any, and we are of opinion that the demurrers were properly overruled. The second and third grounds of error assigned, were in overruling said exceptions to the report of the commissioner. The fact is well established in this record, that before the pretended corporation was created, there was a partnership created and existing in Marion county, composed of said John S. Smith, John W. Everhart, James M. Boggess, Wm. Vandervort and E. D. King, doing business under the firm name of "J. S. Smith & Co."; that the business of the firm was the manufacture of plows, wagons, buggies, &c., and that it bought and paid for all real estate it, or said pretended corporation ever owned, and erected its shops, purchased and paid for a steam engine for the same, and contracted a large amount of debts for money borrowed and materials purchased and used in the business of the firm of J. S. Smith & Co. ; and it is equally well established, that from the time it commenced business on the 20th of February, 1874, until it closed up in October 1878, every debt contracted by it, and contract made so far as is disclosed in this record, was borrowed and made in the name of the firm of J. S. Smith & Co. and not in the name of the corporation—designated as "The West Fairmont Plow,

Wagon and Manufacturing Company," and that all accounts kept, and suits brought by it, were in the name of J. S. Smith & Co.    It is also clearly established that this firm, at its commencement, and this pretended corporation at its organization, had no social or corporate property whatever, except the patent right of a worthless plow, which they pretended had cost $1,500.00 and that all the pecuniary means, used in the business had been procured upon the credit of the individual responsibility of the members, who from time to time became and were members of the firm of J. S. Smith & Co.    It is further true.that on February 10, 1875, the defendants John S. Smith, John W. Everhart, Wm. Vandervort and James M. Boggess—with E. D. King became a corporation—under the laws of this State by the name of "The West Fairmont Plow, Wagon and Manufacturing Company" and shortly afterwards organized, with a capital stock $2,150.00, *all paid in* divided into forty-three shares of $50.00 each; whereof Smith, Everhart and Boggess each had ten shares, Vandervort eleven and King two shares, and that not a dollar of stock was ever paid in, except that said Smith, Everhart, Boggess and Vandervort had put in said worthless patent right for a plow, and that King had been associated with them without paying anything except that Vandervort had assigned him some interest in said worthless patent right.    After it became known that this corporation had been formed, the creditors of the firm of J. S. Smith & Co. required all notes made in the name of the firm to be endorsed by the individual members thereof, or some of them, and this was the character of the debts sued for by plaintiffs, the Farmer's Bank, and Jacob Snyder.

The only real question presented for consideration is whether these facts constituted the defendants, Smith, Everhart, Andrew and James R. McCray, Edwin D. King, Charles W. Scott and A. S. Straight, a co-partnership transacting business under the firm of J. S. Smith & Co., and liable as such partners, or whether they were only liable as a corporation ?

A partnership as between the parties themselves has been defined by this Court to be a voluntary contract between two or more persons for joining together their money, goods,

labor, or all of them, with the understanding that there shall be a community ot profits between them and for carrying on a legal business. *Setzer* v. *Beale*, 19 W. Va. 274; Story on Partnership, sec. 2. A partnership so far as third parties are concerned may exist without any contract between the members thereof, and even contrary to the intention of the parties. In cases where the parties intend to create a partnership between themselves, they are clearly liable to be held as partners to third persons. Among the class of cases where parties who are not partners as between themselves, are held liable as such, to third parties, is the case where parties who are really not partners, hold themselves out, or at least are held out by the parties sought to be charged as partners, to third persons, who give credit to them as such partners. Story on Part. sec. 54. When such a state of facts exist in relation to third parties, such persons so representing, or holding themselves out as partners, and upon the strength of these representations obtaining credit, money or goods, will as to such third parties, be held liable in the same manner and to the same extent as if such partnership existed by express contract. This doctrine results from principles of natural law and justice. For wherever one of two innocent parties must suffer from false confidence reposed in a third person, he who has misled the other to his loss, and is to be benefited by it ought to suffer the loss, and not the person who, trusting to his representations, has been misled by them, and this principle applies with still greater force when the party who made these misrepresentations, and proposed to profit by them knew them to be untrue at the time he made them. Story on P. sec. 64.

Applying these familiar principles of law to this case, but one conclusion could be reached. The proofs clearly show that a partnership by express agreement of the defendants, Smith, Everhart, Vandervort and Boggess, under the name of J. S. Smith & Co. was created in September, 1874, and although from time to time, some of the partners withdrew and others by consent of the remaining partners were taken into and thereby became members of the firm, it still continued to transact the same character of business at the same place under the firm name of J. S. Smith & Co. and the members

thereot were clearly liable as partners, for the debts contracted in the partnership name for the parnership use.   But if there had been no proof of an actual partnership between said defendants themselves, still the facts in proof abundantly show, that as to the plaintiffs and the other creditors mentioned in the bills, they held themselves out as such partners and obtained credit, money and material for the use of the joint concern, and executed and endorsed the notes mentioned in the bills in the name of the firm of J. S. Smith & Co.   This could have been done for only one purpose, and that was to induce the plaintiffs to believe they were members of such a partnership, and therefore personally liable for these debts.   The creation of the little corporation with its capital stock of $2,150 "all paid in" in the shape of a patent right of a worthless plow, may have been deemed an ingenious little scheme to avoid personal liability for the debts contracted by the firm of J. S. Smith & Co. but to permit a fraud so transparent, to accomplish a purpose so dishonest, would be a reproach to a court of justice.

We are of opinion that the members of the firm of J. S. Smith & Co. as from the time constituted were individually liable to the said several plaintiffs and creditors as partners for the debts contracted in the name of said firm while they were members thereof.   This conclusion in effect disposes of the second third and tenth errors assigned by the appellants as they all in substance alleged that the court erred in overruling the appellants exceptions to the commissioner's report. The said first exception was in substance the same, the finding of the commissioner, that the defendant John S. Smith was not liable for the difference of $2,570.13—between the sales made by the joint concern—and the expenses; and for finding said defendants liable as partners of the firm of J. S. Smith & Co., and not as a corporation, and for failing to show by his report what part of the indebtedness of the firm of J. S. Smith & Co., was a lien upon the lands of the defendant Vandervort.

From what has been said, appellants were liable as partners, and being so, it was wholly immaterial to plaintiffs below, how the accounts of the partners stood between themselves.   The plaintiffs were not bound to see them settled

nor to aid them in doing so, and these defendants who had fraudulently obstructed them in the collection of their debts, were not entitled to further delay them—until their accounts between themselves were settled.   None of these exceptions questioned the right of the plaintiffs and creditors of said firm to the relief they prayed for, and the circuit court properly overruled said exceptions for that cause, but even if it had been proper to settle said accounts, the evidence fully warranted the findings of the commissioner.   It is further alleged as error that the circuit court did not decree a dissolution of said partnership.   The answer to this is, it was not asked that this should be done; the existence of the partnership proved was not limited to any period of time, nor did it impose any restrictions upon the right of any member thereof to dissolve it at any time he wished to do so, and unless so dissolved, or dissolved by mutual consent, will be presumed to continue so long as the parties are in life.   Story on Partnership, secs. 269, 271.   The remaining errors alleged are mere incidents growing out of, and resulting from those already disposed of, and need not further be considered.

We are, therefore, of opinion, that there is no error in the decree complained of, and the same is affirmed with costs to the appellees, the plaintiffs in said three causes against the appellants and $30.00 damages.

AFFIRMED.