# CHARLESTON.

## BAER'S SONS v. WILKINSON.

Submitted September 8, 1891.—Decided December 12, 1891.

1. PARTNERS AND PARTNERSHIP—ASSETS—SALE—TRUSTS AND TRUSTEES.

The syllabus in *Darby & Co.* v. *Gilligan et al.* approved and reaffirmed, as follows: "When one member of a mercantile firm purchases the interest of another member, and in consideration thereof assumes to pay all the partnership debts, the firm and

both members being at the time insolvent or on the eve of insolvency, and shortly thereafter the purchasing partner, without paying any of the firm debts, conveys the whole of the assets of the late firm to a trustee in such a manner as to devote the whole thereof to the payment of his individual debts, *held*, such sale, being without any valuable consideration, is ineffectual to convert the social assets into individual property, and, as to the equitable rights of the firm creditors, such trust-deed is fraudulent and void. "

2. PARTNERS AND PARTNERSHIP—ASSETS—FRAUDULENT CONVEYANCE.

There are two partners composing a firm, one of whom undertakes to convey the whole firm property by a deed in which his individual debts, or debts other than those of the firm, are given preference. The deed is made at a time when the copartner is present, or within easy reach, but he is not consulted, and does not ratify, and does not concur in such assignment. *Query:* Is such a deed, made under these circumstances, but not otherwise fraudulent, valid and effectual to deprive the creditors of the firm of their right to have the social assets applied to pay the social debts? It seems not.

3. PARTNERS AND PARTNERSHIP—ATTACHMENT—FRAUDULENT CONVEYANCE—PRIORITY OF DEBTS.

An attachment issued under paragraph 6 of section 1, c. 10, of the Code, by a firm creditor who seeks to set aside a fraudulent deed made by one partner under circumstances first above described, if directed against the trustee or one partner only, will be ineffectual to create a lien upon the firm property, and will give no priority to such attaching creditor.

*H. M. Russell* for appellants, cited 30 W. Va. 443 ; 26 W. Va. 807 ; 8 Leigh 415 ; 18 Gratt. 404 ; 25 W. Va. 670 ; Id. 288 ; 18 Gratt. 387 ; 23 W. Va. 771 ; 9 S. E. Rep. 432 ; 20 W. Va. 614 ; 1 Ves. 131 ; 1 Bates Part. § 502 *et seq. ;* 12 S. E. Rep. 708 ; 21 N. E. Rep. 733.

*C. L. Brown* for appellees, cited Code, c. 133 ; 27 Gratt. 479 ; 31 W. Va. 156 ; 30 W. Va. 586 ; 20 O. 441 ; Sto. Part. § 401 ; 2 Paige 400 ; 5 O. S. 508 ; 30 O. S. 380 ; 3 Rob. (N. Y.) 691 ; 28 How. Pr. 488 ; 16 N. J. L. 147 ; 90 N. C. 90 ; 4 Sawy. 138 ; 24 Conn. 290 ; 52 N. Y. 146 ; 5 Munf. 418 ; 64 Ga. 243 ; 14 Ia. 251 ; 74 Ga. 86 ; 75 Ill. 48 ; 40 Pa. St. 107 ; 2 H. & M. 603 ; 6 R. 509 ; 10 L. 155 ; 11 G. 636 ; 1 Sandf. Ch'y 348 ; 60 Wis. 418 ; 6 Munf. 418 ; 1 Bates Part. §§ 338, 350, 457, 509, 551, 556, 557, 562, 566, 1071.

LUCAS, PRESIDENT:

This case comes before us on appeal from a final decree entered by the Circuit Court of Jackson county on the 13th day of August, 1890.

In February, 1888, J. E. Wilkinson and T. B. Wilkinson, under the firm name of Wilkinson & Co., were carrying on a mercantile business in the town of Ravenswood. The appellants, Delaplain, Son & Co., were engaged in the wholesale business in the city of Wheeling, and sold goods to Wilkinson & Co. to the amount of one thousand one hundred and ninety six dollars and ninety nine cents; and on the 18th day of February, 1888, Wilkinson & Co., executed three notes for that amount. Subsequently, in March of the same year, some additional sales having been made, and these notes not being yet due, one of the partners, J. E. Wilkinson, executed a new note for one thousand two hundred and seventy three dollars and forty nine cents, which embraced the three former ones; and it is claimed by the appellants that this new note was by them received, not in payment, but as collateral security, of the former notes. It is alleged also that this new note was secured by a deed of trust on the separate estate of J. E. Wilkinson's wife.

In February, 1889, Thomas B. Wilkinson retired from the firm, and his interest was purchased by one W. A. Tallman, who with James E. Wilkinson, as is alleged, composed the new firm of Wilkinson & Tallman. The new firm, appellants aver, assumed the liabilities of the old firm of Wilkinson & Co. It appears that Tallman, although he agreed to pay two thousand dollars, had no means, and really paid nothing. To the new firm, however, of Wilkinson & Tallman the appellants sold a further bill of goods amounting to two hundred and sixty four dollars and forty four cents.

On the 1st of October, 1889, the firm of Wilkinson & Tallman dissolved, Wilkinson taking the assets and agreeing with Tallman to pay the debts. It seems reasonably clear from the evidence that the firm was then insolvent.

On the 9th day of October, 1889, James E. Wilkinson made an assignment of all the assets of the firm for the benefit of creditors. The deed purports to convey all of

his property, and with firm creditors some of his individual creditors are included as beneficiaries. Wilkinson's notes of one thousand two hundred and seventy three dollars and forty nine cents were included among the preferred debts. The appellees, Baer's Sons, brought suit to set aside this deed of trust as fraudulent, and attached the goods included in the assignment. The Circuit Court adjudged and decreed that the deed was fraudulent. The trustee had in the meantime proceeded to execute the trust, had disposed of the stock in a manner commended by all the parties to the suit, and had paid over three hundred dollars to the appellants to be credited on their preferred debt. The Circuit Court gave preference to the attaching creditors, and ordered the fund to be distributed upon that basis, and further decreed, in pursuance of this view, that the three hundred dollars already paid to appellants should be refunded and paid over by them to such attaching creditors. The trustee, who perhaps had become garnishee under the attachment, was directed to pay over all the money, securities, and accounts derived from the trust into the hands of the general receiver of the court, to be by him distributed or administered in pursuance of the principles of the cause adjudicated as already described. A special replication was filed by the appellees, which was excepted to, but the objection was overruled by the court. There was likewise an injunction obtained by them against the trustee, which was perpetuated.

It is assigned as error that this special replication was allowed to be filed over the objections of the appellants; that certain exceptions which appellants had indorsed upon depositions were erroneously overruled; that it was error to refuse to dissolve the injunction; that the assignment was erroneously decreed to be fraudulent, and the distribution directed was consequently erroneous; that to receive and adopt as conclusive the admissions of Wilkinson, and the recitals of the deed as to the existence and amounts of the debts provided for, was error; and finally the direction to refund the three hundred dollars and the decree against appellants for that sum, with leave to issue execution, were erroneous.

This case presents the same principles for consideration which were disposed of in *Darby* v. *Gilligan*, 33 W. Va. 246 (10 S. E. Rep. 400.) In that case it was held: "When one member of a mercantile firm purchases the interest of another member, and in consideration thereof assumes to pay all the partnership debts, the firm and both members being at the time insolvent, or on the eve of insolvency, and shortly thereafter the purchasing partner, without paying any of the firm debts, conveys the whole of the assets of the late firm to a trustee, in such manner as to devote the whole of them to the payment of his individual debts, held, such sale, being without any valuable consideration, is ineffectual to convert the social assets into individual property; and, as to the equitable right of the firm creditors, such deed is fraudulent and void."

A distinction is attempted to be drawn between the present case and the one just cited, based upon the fact that in this case the grantor, one of the partners, did not attempt by the assignment to apply the social assets exclusively to his individual debts. In reply to this argument, it is necessary to consider that the direction in the deed is to pay first a debt of the preceding firm of Wilkinson & Co. amounting to one thousand two hundred and seventy three dollars and forty nine cents, and that all of the indebtedness in the second class of preferred creditors was contracted by the previous firm of Wilkinson & Co. These debts, if paid in order of priority, would consume the whole fund, or very nearly so, that has been realized from the stock of goods. The debts of the former firm of Wilkinson & Co. had become really individual debts of the grantor, J. E. Wilkinson; that is to say, he was individually liable for them, and has given his individual obligation for the largest debt named in the first class of preferred creditors.

The whole reasoning in the case of *Darby* v. *Gilligan*, as found in the opinion of the court, applies fully to this case. As was said in that case, so we may say of the case at bar, the firm as well as the individual partners were indebted to insolvency at the time the contract of dissolution was made. As the firm of Tallman & Wilkinson individually were then insolvent, there was no valuable consideration for the

contract; and the stock of the firm was plainly liable for the firm's debts, independently of any contract between the members. As a question of law, the whole transaction, so far as J. E. Wilkinson was concerned, was fraudulent, and the circumstances which rendered it so were known to the trustee. Of course I do not mean to impute actual moral obliquity to any one engaged in the transaction, but the purpose to withdraw the stock of the firm from its creditors, and devote it almost entirely and exclusively to the payment of the debts of the extinct firm of Wilkinson & Co., was in law a fraudulent intent, which vitiated the whole transaction without in the slightest degree changing the property of the goods.

To escape the force of this conclusion, some attempt is made to prove that the new firm of Tallman & Wilkinson had assumed the debts of the former firm. It is hardly necessary to say that the burden of this proof was upon the appellants, who were the chief beneficiaries in the deed. For this purpose they made Tallman their own witness, although he had formerly testified against them; and he adhered pertinaciously to his former statement that the two Wilkinsons, who composed the former firm, were to be responsible for the old debts, and that there was no assumption by the new firm.

I conclude, therefore, that the Circuit Court did not err in setting aside this deed as absolutely void and fraudulent, and in determining that there was no change of property in the stock of Wilkinson & Tallman, but that the same remained primarily liable for the debts of that firm, including those of the plaintiff and the other petitioners. I can not see that Chas. H. Stone has any interest whatever in the proceeds of the goods, or in this controversy. The question is wholly immaterial as to the identity and preservation of goods which he may have sold the former firm of Wilkinson & Co. He had lost the property in the goods themselves, and had retained no lien, nor was there any such lien by implication of law.

An interesting question is raised by counsel in the argument as to the power of one partner to dispose of the goods of the firm without the concurrence or assent of his copart-

ners. That question does not arise in this case, and therefore I do not think it necessary to determine it. In the case of *Scruggs* v. *Burruss*, it was held by this Court that "one member of a firm may execute a deed of trust on personal property to secure the creditors generally of the partnership." 25 W. Va. 670. It may be observed with reference to that case that it was difficult to determine who was the copartner of one John S. Pitzer—whether it was Burruss or his wife; and the wife who held herself out ostensibly as the acting copartner, had signed the deed with Pitzer.

Without discussing this question further, I will remark that neither that case nor the leading case of *Anderson* v. *Tompkins*, 1 Brock. 456, nor the case of *Sommerville* v. *McCullough*, 8 Leigh, 415, nor *Forlkner* v. *Stuart*, 6 Gratt. 197, nor *Gordon* v. *Cannon*, 18 Gratt. 387, can be quoted as authority to sustain the position that an assignment like this, where there are two partners, one of whom has undertaken to convey the whole property of the firm by deed in which his individual debts, or debts other than that of the firm, are given priority, will be sustained, if made at a time when the copartner, who is present or within easy reach, is not consulted, and does not concur in such deed. I find no authority in this State or in Virginia which would justify us in holding that such an assignment would be valid and effectual to deprive the creditors of the firm of their right to have the social assets applied to pay the social debts.

We come now to discuss a question, the decision of which is directly involved, and that is as to the distribution of the fund derived by the sale of the stock of goods, and now in the hands of the general receiver of the Circuit Court.

It appears from the final decree, and it is admitted in the argument of counsel, that the plaintiffs in the case had sued out an attachment. No attachment nor any proceedings of that character are copied in the record; and we can not, therefore, determine upon whom it was served, or against whom the preliminary proceedings relating to such attachment were had. The trustee in his answer says

nothing whatever about it, and, for aught this Court can see, it may have been served only upon J. E. Wilkinson.

The rule is well established that, where creditors assail a fraudulent conveyance, they obtain a lien upon the property which is the subject-matter of the suit from the time of the filing of their respective bills or petitions, and in order of priority ascertained by the respective dates when the bills or petitions were filed. *Clark* v. *Figgins*, 31 W. Va. 156 (5 S. E. Rep. 643); *Wallace's Adm'r* v. *Treakle*, 27 Gratt. 479. The same principle, it is said, will be applied in subjecting the separate real estate of a married woman. *Hughes* v. *Hamilton*, 19 W. Va. 366. This principle has been applied, also, in the case of insolvent corporations. *Pyles* v. *Furniture Co.*, 30 W. Va. 123 (2 S. E. Rep. 909); *Sweeney* v. *Sugar Refining Co.*, 30 W. Va. 443 (4 S. E. Rep. 431.) But I have not been able to find any case like the one we are now considering, to which the principle has been, to its full extent, applied. In every case which I have been able to find, where the principle has been recognized and applied to its full extent, the *jus disponendi*, or right of disposition, has resided in the party who has been guilty of the fraud.

I have been unable to find any case in which a mere agent, who has disposed of the goods of his principal in a fraudulent manner, or converted them to his own use, has been held to have had power to render them subject to an attachment by reason of his own fraud, committed against the will of his principal. The reason for this distinction is apparent, viz., that the agent has exceeded his authority, and the principal should not be made to suffer for the default of the agent. The power of one partner to deal singly with the assets is by reason of his agency. Each partner is the agent of all, and each bestows upon his fellow authority to deal with the assets, and to dispose of them with a view to carry on the business of the firm, for the mutual benefit of all. When one partner, therefore, passes beyond the limit of this agency, and disposes of the property for his own benefit by the execution of a fraudulent conveyance, it is difficult to understand how one firm creditor can, by levying an attachment against the offending partner,

gain any priority, except upon his interest; and if the firm is insolvent, that interest amounts to nothing.

I have been unable to find any case in our courts which would authorize me to say that the lien, in the nature of a judgment, which the creditor who first assails the fraudulent conveyance usually obtains, would attach against firm assets in an attachment proceeding against one member only, or against the trustee. On the other hand, in the case of *Scruggs* v. *Burruss*, 25 W. Va. 670, 676, it is held: "Where a deed of trust has been executed on personal property of a partnership by a member of a firm for the benefit of its creditors generally, and two of the firm creditors, without notice of such deed, have attachments sued out and levied on the interest of one member of the firm in the partnership property, such levy does not give such creditors priority over the other partnership creditors secured in the deed."

In the opinion of the court, after having shown that the attachment proceedings were directed only against one member of the firm, it said: "It was then only the interest of said Pitzer in the firm property which they attached. That interest might be something, or it might be nothing. A settlement of the partnership might show that Pitzer had drawn from the firm all, or more than all, he was entitled to, and that he had no interest. These attachments do not give the attaching creditors any priority over the other partnership creditors. If, after the partnership is settled, he has any interest, it might and probably would give them priority on that interest."

In the case of *Bank* v. *Smith*, 26 W. Va. 541, the point would perhaps properly have arisen; but it seems to have been entirely overlooked in the discussion of the case, and in the deliberations of this Court. In that case, two members of a firm consisting of six members undertook to convey assets of the firm for an improper purpose, and three suits were instituted by three several creditors of the firm for the purpose of setting aside the fraudulent conveyances.

The Farmer's Bank, which was plaintiff in the first suit, issued an attachment against the firm itself, apparently, from the caption; but the order was to attach the estate of

the defendant, and also of the firm. The Circuit Court referred the case to a commissioner, who reported that the attaching creditor had gained a priority over the other firm creditors by virtue of his attachment. Strange to say, however, he reports no priority whatever in favor of the other plaintiffs, who filed their respective bills to set aside the deed; and who, if the proceedings were against an individual, would, of course, have been entitled to priority, upon the general principle already announced, according to the dates of filing their respective bills. The Circuit Court confirmed this report, and its decree was here affirmed. But, as I have said, there was no discussion of the principle, and the point does not seem to have been considered.

In the case of *Sweeny* v. *Sugar Refining Co.*, 30 W. Va. 443 (4 S. E. Rep. 431) and *Pyles* v. *Furniture Co.*, already cited, this Court held that in the case of a fraudulent conveyance by an insolvent corporation a priority was gained by creditors assailing the fraudulent conveyance, just as it would be in the case of an individual. By analogy it might be supposed that an assignment made by a firm under similar fraudulent circumstances would subject the firm property to the well established rules of priorities, on the part of the firm creditors, who assailed the assignment.

But, even conceding that such a conclusion from analogy would be correct, how does that affect the question which we are now considering, in a case where one partner, against the interest and consent of the firm or of his associate partner, undertakes to convey in an unauthorized manner the whole assets of the firm? In the absence of some controlling authority, I am constrained to believe and to decide, both upon reason and the universal practice in other states, so far as I have been able to ascertain it from reported cases, that in the case of a conveyance by one partner beyond the scope of his agency the firm creditors should share equally in the assets when such fraudulent conveyance is set aside, and neither superior diligence in bringing suit nor levying an attachment upon the firm property by any one creditor will entitle him to priority.

Upon looking at our attachment law, c. 106 s. 1, par. 6, Code 1891, it will be found that the levy of the attachment must

be upon the property of the person who has made the fraudulent assignment or disposition with intent to defraud his creditors; but in this case which we are now considering, the fraudulent assignor had no property upon which the levy of an attachment could be made, while the firm was guilty of no fraud.

With the lights now before us, therefore, and in the absence of the attachment from the record, we are constrained to decide that this property should have been divided among the creditors of Tallman & Wilkinson *pro rata*, leaving out Stone, who, upon his own showing, has no claim to be considered such a creditor; but including Delaplain, Son & Co., to the extent only of their minor debt of two hundred and sixty four dollars and forty four cents, which is the debt of said firm.

It seems to us, further, that the objection made by appellant's counsel to the action of the Circuit Court in settling the amounts of the respective creditors, without requiring any evidence whatever beyond the deed, and the mere affidavits appended to the bills of accounts is well taken; and the course pursued in *Bank* v. *Smith, supra,* of referring the case to a commissioner, would seem to be the appropriate method for ascertaining by proper evidence and report, the order in which the funds should be distributed, upon the principle of a *pro rata* distribution among all the creditors of Wilkinson & Tallman.

What has already been said above obviates the necessity of passing upon any other points of error insisted upon by the appellants. The three hundred dollars already received by the appellants must be returned to the receiver, after crediting their distributive share of the fund.

The decree of the Circuit Court must be reversed and annulled, and the cause remanded with directions to proceed therein in accordance with the principles set forth in this opinion, and further according to the principles of equity.

REVERSED. REMANDED.