# CHARLESTON.

ANDREWS *et al.* v. MUNDY *et al.*

Submitted September 9, 1891. Decided February 3, 1892.

1. ATTACHMENT—PARTNERS AND PARTNERSHIP—PRIORITY.

A partnership consists of two members, one of whom is a non-resident, but the other is found by the verdict of a jury to be a resident of this State. A firm creditor issues an attachment against the firm, and levies it upon the social assets. *Held,* the attaching creditor does not thereby gain any priority over other firm creditors, except as to the individual interest of the non-resident partner.

2. ATTACHMENT—PARTNERS AND PARTNERSHIP—APPEARANCE—PUBLICATION—NON-RESIDENT.

When such an action is brought, and service of the writ is had upon only one partner, order of publication should be had against the other partner, as prescribed by the statute; but if both partners appear by attorney, and submit motions or file a plea, this is an appearance to the suit, and the court may proceed as if both parties had been served.

3. ATTACHMENT—NON-RESIDENT.

In order to sustain an issue that a party is not a non-resident,

he has only to establish the fact of actual residence in this State under such concomitant circumstances as make it entirely practicable to serve him with process, and to reach his property according to the course of the common law. If a man's family has been removed to this State, or if, having no family, he has himself removed here, and entered into business, and his means and property have been brought here, and he dwells here, and his business engagements in this State are such as to render his stay wholly uncertain and indefinite as to duration, he is not a non-resident of this State, within the purview of the attachment law.

4. SPECIAL FINDINGS.

Submitting to the jury particular questions of fact, under our statute, is within the discretion of the trial-court, subject to review; but it is not erroneous to refuse to permit such questions to be propounded when they are immaterial or irrelevant, and unless the answers thereto, if contrary to the general verdict, would control the same and be conclusive of the issue.

5. ATTACHMENT—AFFIDAVIT—NON-RESIDENT.

The following affidavit, as the basis of an attachment, is held to be a substantial compliance with the statute, so far as concerns the non-residence of the defendants: "State of West Virginia, Wayne county, to wit: Joseph A. Lowry, agent for Andrews, Bates & Co., being first duly sworn, says that the said Andrews, Bates & Co. have instituted an action at law against J. A. Mundy, Jr., & Co. for the recovery of a claim or debt arising out of contract, in the Circuit Court of Wayne county; and affiant further says that the nature of the said plaintiffs' claim is as follows: For goods sold and delivered to said J. A. Mundy, Jr., & Co.; and that affiant believes the said plaintiffs, Andrews, Bates & Co., are justly entitled to recover in the said action at least the amount of two thousand six hundred and twenty three dollars and seventy four cents with interest until payment; and that the affiant believes that the defendants are non-residents of the State of West Virginia, and are converting, or are about to convert, their property, or a material part thereof, into money or securities, with intent to defraud their creditors; and have assigned or disposed of their property, or a material part thereof, or are about to do so, with intent to defraud their creditors. Subscribed and sworn to before me this 16th day of January, 1891."

*Marcum & Peyton* for plaintiffs in error, cited Wap. Att. 36–38; 31 W. Va. 392; Dan. Att. §§ 268, 270; 30 Gratt. 718.

*G. G. Burgess, L. Marcum* and *Campbell & Holt* for defendants in error, cited 28 Ga. 27; 30 Gratt. 718.

LUCAS, PRESIDENT:

The firm of Andrews, Bates & Co., who are plaintiffs in error in this Court, brought an action of *assumpsit* against J. A. Mundy, Jr., & Co., partners (the firm consisting of J. A. Mundy, Jr., and C. D. Mundy) in the Circuit Court of Wayne county. The service was had upon C. D. Mundy in person, but J. A. Mundy was returned: "Not found." On the 16th day of January, 1891, the plaintiffs made affidavit and sued out an attachment against the property of the defendants. The affidavit is as follows:

"State of West Virginia, Wayne county, to wit: Joseph A. Lowry, agent for Andrews, Bates & Co., being first duly sworn, says that the said Andrews, Bates & Co., has instituted an action at law against J. A. Mundy, Jr., & Co., for the recovery of a claim or debt arising out of contract, in the Circuit Court of Wayne county; and affiant further says that the nature of the said plaintiff's claim is as follows: For goods sold and delivered to said J. A. Mundy, Jr., & Co.; and that affiant believes the said plaintiffs, Andrews, Bates & Co., are justly entitled to recover in the said action at least the amount of two thousand, six hundred and twenty three dollars and seventy four cents with interest until payment; and that the affiant believes that the defendants are non-residents of the state of West Virginia, and are converting, or are about to convert, their property, or a material part thereof, into money or securities, with intent to defraud their creditors; and have assigned or disposed of their property, or a material part thereof, or are about to do so, with intent to defraud their creditors.

Subscribed and sworn to before me this 16th day of January, 1891.

"J. H. MILLS, Clerk Wayne Circuit Court."

Bond was given, and the property was taken possession of by the sheriff, consisting of horses, mules, and other property appropriate for a contractor on a railroad. The bond was objected to, and, as it was defective on its face, the court sustained the objection; but allowed the plaintiffs forthwith to give a proper bond, with security approved by the court, and the sheriff made a second levy on the same property, and retained the same in his possession. To the sec-

ond bond there seems to be no objection, but the defendant C. D. Mundy moved the court to make the plaintiffs elect upon which order of attachment they would proceed. The court denied the motion, and the defendant C. D. Mundy, who alone up to this point had appeared, excepted to this action of the court. The same defendant, through his counsel, moved to quash the return of the sheriff on the two orders of attachment; but the court refused to quash, and allowed the sheriff to amend by inserting in said returns, after the words, "as the property of J. A. Mundy, Jr.," the following words, to wit, "and C. D. Mundy."

At the February term the defendant filed the following plea in abatement:

"J. A. Mundy, Jr., & Co., advs. Andrews, Bates & Co. C. D. Mundy, one of the defendants, comes in his own proper person, and, desiring to controvert the existence of the grounds for the attachment stated in the affidavit, denies that the said defendants are non-residents of the state of West Virginia, and this the said defendants are ready to verify."

Upon this plea the issue was made up, and the case was tried by a jury, evidence heard, and a verdict returned for the defendants.

Instructions were asked for by both parties, three of, which were given for the plaintiffs, and others offered by them were refused, while all of those asked for by the defence were granted. All of these instructions are set out in a bill of exceptions, and they are as follows:

For plaintiffs: "(1) The Court instructs the jury that, if they believe from all the evidence that both of the defendants are non-residents of the State of West Virginia, they will find for the plaintiffs; but if they believe from the evidence that both of the defendants are residents of the state of West Virginia, then they will find for the defendants.

"(2) The court further instructs the jury that, if they believe from the evidence that either of the defendants is a non-resident and the other is a resident, they will find which one of said defendants is a resident, and which is a non-resident.

"(3) The court further instructs the jury that a person living or residing at a place temporarily, or for a short time, in order to complete the building of a portion of a railroad alone, without having otherwise acquired a residence therein, that will not, of itself, make him a resident of this State, under the attachment laws thereof.

"(4) The court further instructs the jury that if they believe from the testimony in this case that in the month of April, 1890, the defendant C. D. Mundy was a resident of and domiciled in another State, and that he came to this State for the purpose of supervising the building of a portion of a railroad under a contract, without the intention of remaining in this State, or with an intention of returning to from whence he came or going elsewhere, and that from that time up to the 16th day of January, 1891, he had not formed an intention in his mind of remaining in this State permanently or for an indefinite length of time, and also believes that the defendant, J. A. Mundy, Jr., was a non-resident of this State on the said 16th day of January, 1891, then they will find for the plaintiffs.

"(5) The court further instructs the jury that they have the right in making up their verdict to take into consideration all the acts, facts, declarations, and circumstances tending to show what the defendants considered as their place of residence.

"(6) The court further instructs the jury that they are the sole judges of the weight of the testimony, and they have the right to give to each witness that credit to which they may think him entitled."

Thereupon the court gave the jury the said second, fifth and sixth instructions asked for by the plaintiffs, but the said court refused to give the jury the said first, third and fourth instructions, as asked for by the plaintiffs as aforesaid. To which said ruling of the court in refusing to give the jury the said first, third, and fourth instructions the plaintiffs, by their attorneys, except.

Thereupon the defendants, by their attorneys, asked the court to give the jury the following written instructions, viz:

"(1) The court instructs the jury that, before they can

find a verdict for the plaintiffs, they must believe from the evidence in the case that J. A. Mundy, Jr., and C. D. Mundy are both non-residents of this State; proof that one of them is a non-resident, the other being a resident, is not sufficient to entitle plaintiffs to a verdict.

"(2) The jury are further instructed that it is not essential to constitute C. D. Mundy, one of the defendants, a resident of this State, that he should come here with the intention to remain here permanently; that, as a matter of law, he may have his domicile or home elsewhere, and still be a resident of this State.

"(3) If the jury believe from the evidence in this case that the said C. D. Mundy came to this State in March or April, 1890, to construct a portion of a railroad therein under a contract, and since that time has actually resided in this State, and that it will require some time yet to complete his contract, and that he has till June next to complete his work under his contract, then the jury is instructed that on the 16th day of January, 1891, he was not a non-resident of this State, and they should find for the defendants."

To the giving of said instructions Nos. 1, 2, and 3, as asked for by the defendants, the plaintiffs, by their said attorneys, objected, which said objections were overruled, and the court gave the said instructions Nos. 1, 2, and 3 to the jury, as asked for by the defendants.

Both plaintiffs and defendants have assigned grounds of error, but I will proceed to consider first those of the plaintiffs below, who are appellants in this Court. First, as to instructions Nos. 1, 3, and 4, which were refused. There seems to be a misapprehension as to what issue was to be tried. The plea in abatement alleges, in substance, that said "defendants" are non-residents of the State of West Virginia, and this the said "defendants" are ready to verify. On sundry occasions it appears that the defendants had previously submitted motions in open court; for example, in one place it is said: "On motion of the defendants, they have leave at any time to execute bond," *etc.* During the trial, also, it is certified that the defendants introduced witnesses, and finally it is said and certified by the court that

the defendants, by their attorneys, asked the court to give the jury instructions. We are led to conclude, therefore, that, so far as this issue and the action of the court below in abating and quashing the attachment are concerned, by appearing in court through his attorneys the defendant J. A. Mundy, upon whom there was no process nor order of publication, as there should have been, has submitted himself to the jurisdiction of the court, and we must decide the questions arising precisely as if service had been had upon him. See *Layne* v. *Railroad Co.* 35 W. Va. 438 (14 S. E. Rep. 123).

The first instruction, therefore, asked for by the plaintiffs, taken in connection with their second instruction, was proper and should have been given. An attachment upon one of two partners, who is a non-resident, creates a lien upon his interest in the social assets, whatever that interest may be, as ascertained upon a settlement of partnership. See *Baer* v. *Wilkinson,* 35 W. Va. 422 (14 S. E. Rep. 1) and cases there cited. This error, as we shall see, was not injurious to the plaintiffs.

We come now to consider the third instruction asked for by the plaintiffs. This instruction was properly refused. We think the law, as expounded by the court of appeals of the State of Virginia, is applicable to this case. *Long* v. *Ryan,* 30 Gratt. 718. The syllabus of that case is as follows:

"R., domiciled in Washington, obtains a contract upon the W. & S. R. R. to construct three sections of the road, and he may be employed to build culverts and bridges at such time as the engineer of the road may fix. He rents out his house in Washington, removes his family to a place on the route of the road, and keeps house. Before the work is finished, or the time for completing it has arrived, an attachment is sued out against his effects. Held, he was a resident of the state, and the attachment was properly quashed."

By comparing the instruction we are considering with the syllabus just quoted, it will be found that the instruction was entirely too broad, and goes further than the law warrants. A distinction must be drawn between "dom-

icile" and "residence." Mr. Drake says: "In determining whether a debtor is a resident of a particular state, the question as to his domicile is not necessarily always involved; for he may have a residence which is not in law his domicile. 'Domicile' includes 'residence' with an intention to remain; while no length of 'residence,' without an intention of remaining, constitutes 'domicile.'" These views are further enforced and illustrated by Mr. Drake in sections 61 and 62 of his work on Attachment.

The law upon the subject of domicile this Court has defined in the case of *White* v. *Tennant*, 31 W. Va. 790 (8 S. E. Rep. 596). In order to constitute domicile, two things must concur,—the fact of residence and the intention of remaining; but, in order to sustain an issue that a party is not a non-resident, he has only to establish the fact of actual residence, under such concomitant circumstances as make it entirely practicable to serve him with process, and to reach his property according to the course of the common law. If a man's family has been removed to this State; if his business, means, and property have been brought here; if he is engaged in business here, and dwells here, and his business engagements in this State are such as to render his stay wholly uncertain and indefinite as to duration— it would seem from the authorities that, within the purview of the attachment law, he is not a non-resident of the State. We think, therefore, that the third and fourth instructions asked for by the plaintiffs where properly refused.

The next assignment of error is that instructions Nos. 1, 2, and 3 asked for by the defendants were given against the protest of the plaintiffs. Instruction No. 1 of the defendants is in direct conflict with instruction No. 2 of the plaintiffs, which had already been properly given. The defendants had themselves tendered an issue by a plea averring, in effect, that they were both residents. On the other hand, it is said that the law makes it incumbent upon the plaintiff to prove a negative, viz., that the defendants are non-residents. This burden he meets when he proves that either of them is a non-resident, because in that case it can not be said that the defendants are both

entitled to be relieved from the lien of the attachment, and the form of the issue does not, I think, prevent the plaintiffs from having the benefit of the true state of the facts, viz., that one is a resident and the other a non-resident. The case is somewhat analogous to the trial of a joint action against joint trespassers, where they defend jointly, and the issue is made up on a plea that the defendants are not guilty; nevertheless the jury may respond to the issue by finding one guilty and the other not guilty. We think, therefore, that it was erroneous to grant defendants' instruction No. 1.

But the error was manifestly harmless, since the jury, by their answers to special interrogatories Nos. 1 and 2, showed they had not been misled, but that they understood the nature of the inquiry, and found that C. D. Mundy was not a non-resident, while J. A. Mundy, Jr., was a non-resident. And so, in regard to the defendants' third instruction, it states a self-evident proposition in such ambiguous phrase as to render the meaning somewhat obscure; but it is apparent that no injury could have resulted from the ambiguity. Defendents' instruction No. 2 was not erroneous, and was properly granted.

The next assignment of error on the part of appellants is that the court refused to require the jury to return answers to interrogatories which had been propounded by the court, on motion of the plaintiffs, as follows:

"And thereupon the plaintiffs, by their attorneys, submitted the following interrogatories in writing to the jury, which were by the court given to the jury to answer, viz.: Question 1st by plaintiffs: When C. D. Mundy came to West Virginia, about April, 1890, did he have an intent fixed in his mind to make it his permanent place of residence? Question 2d by plaintiffs: Did C. D. Mundy ever have an intention fixed in his mind to reside permanently in West Virginia? Question 3d by plaintiffs: On the 16th day of January, 1891, had C. D. Mundy permanently severed his former residence? Question 4th by plaintiffs: Did C. D. Mundy in good faith, on the 16th day of January, 1891, have a fixed and well-defined intention in his own mind to permanently reside in West Virginia, after the contract he was then working upon was completed?"

And thereupon the jury retired to their room to consider of their verdict, and after awhile returned into court with a verdict in the following words: "We, the jury, find for the defendants." The answers returned by the jury to the said questions submitted by the plaintiffs were in the following words, viz.: To question first: "He did not." To questions 2d, 3d, and 4th no answers were returned. And the plaintiffs moved the court that the jury be sent back to their room, and required to answer the said 2d, 3d, and 4th questions propounded by them as aforesaid, to which the defendants objected, and the court sustained said objection, and refused to require the jury to return.

It will be observed that the court, by consent of parties, had already submitted to the jury two interrogatories in writing, as follows: *First*—Was J. A. Mundy, Jr., a non-resident of this State on the 16th day of January, 1891? *Second*—Was C. D. Mundy a non-resident of this State on the 16th day of January last? These interrogatories covered the whole case, and the court might very well have refused to propound any others whatever.

In the case of *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va. 155 (11 S. E. Rep. 1009) it is held that submitting to the jury, under our statute, particular questions of fact, is within the discretion of the trial court, subject to review; but it is not erroneous to refuse to permit such questions to be propounded when they are immaterial or irrelevant, and unless the answers thereto, if contrary to the general verdict, would control the same, and be conclusive of the issue. If the jury had answered all the special interrogatories propounded by the plaintiffs in a manner which would have been most favorable to said plaintiffs, the answers ought not to have affected the general verdict, and indeed, would not have been inconsistent therewith. The counsel for the plaintiffs, apparently, had lost sight of the distinction between "domicile" and "residence."

The next assignment on the part of the plaintiffs is that the court erred in refusing, on their motion, to set aside the general verdict, which was "for the defendants." This assignment is well taken. It was admitted on the trial that J. A. Mundy was a non-resident, and the court had, both

by its interrogatories and instructions, directed the jury, if one, and only one, of the defendants was a non-resident, to so find, and to designate which one was a resident ánd which was not. And this the jury did.

We have thus gone through this record, and endeavored to decide every point which fairly arises on its face. We are now to determine whether or not the judgment of the Circuit Court was correct. Had this claim been for an individual debt, it would have been error to quash the attachment upon the erroneous general verdict of the jury. But the attachment was for a social debt, and the question to be determined may be stated as follows: A partnership consists of two members, one of whom is admittedly a non-resident, but the other is found by the jury to be a resident of this State. A firm creditor issues an attachment against the firm, and levies it upon the social assets. Does he thereby gain a priority? This question was stated by this Court in *Scruggs* v. *Burruss*, 25 W. Va. 676, but, its decision not being necessary, the Court purposely refrained from passing upon it.

There can be no doubt that the text-writers are not entirely in accord upon this question, while the decisions in the various states are also in conflict. Mr. Waples on Attachments, *etc.*, on page 156, says: "The non-residence of a co-debtor is no ground for attaching the resident debtor's property, nor that of a co-contractor for attaching both contractors' property; but the residence of one contractor within the state will not shield the property or interests of his co-contractor living out of the state from attachment. Whether partnership effects are attachable in a suit against one member of a firm who is a non-resident upon a debt contracted by the partnership depends upon the character of the obligation—whether it is joint, or joint and several. If the obligation sued upon is joint, partnership effects are not attachable in such suit; but if it is joint and several, the rule is otherwise. It is joint by the law of partnership without statutory modifications; so all the partners must be sued in order to attach property of the firm."

The authority of Drake in the same direction is still more

emphatic. He says: "Where a debt is due by a firm, against one member of which there is a sufficient ground for suing out an attachment, but none against the other, it is wholly inadmissible to issue an attachment against the latter." Drake, Attach. 37*a*.

To the same effect is Wade, Attach. § 80: "The interest of a resident partner can not be levied on, even for a partnership debt, in an attachment on account of the non-residence of his copartners. Nevertheless the interest of the non-resident may be so levied upon, whether the debt be against the firm or against the individual member."

In opposition to these strong and concurrent authorities, counsel for defendant in error cite us to rather an obscure sentence to be found in section 382, Field, Lawyers' Briefs, where he says: "Where two partners are severally, as well as jointly, liable for the debts of the firm, a non-resident partner may be proceeded against by attachment on that ground, although the other partner may be a resident of the State where the suit is brought, and the attachment levied upon the partnership effects." As authority for this proposition he cites *Green* v. *Pyne*, 1 Ala. 235; *Conklin* v. *Harris*, 5 Ala. 213; *McHaney* v. *Cawthorm*, 4 Heisk. 508; *Wiley* v. *Sledge*, 8 Ga. 532; *Lobdell* v. *Bushnell*, 24 La. Ann. 295; *Jefferson Co.* v. *Swain*, 5 Kan. 376.

I have examined all the authorities thus cited by Mr. Field, and I find that but one of them is applicable to such a case as we now have in hand, and that is the case cited from 5 Kan., which is based entirely and distinctly upon the phraseology of the attachment law of that State, and is not at all applicable to West Virginia. In my judgment, the language of our own act precludes any such conclusion, as will be seen by comparing Code (1891) c. 51, s. 1 and Code (1891) c. 106, s. 5. To permit the property of the whole firm, composed, for example, of ten members, nine of whom are resident here, to be attached and sequestered, because the tenth member is a non-resident, would, as it seems to me, be contrary to public policy and common right.

In the case of *Delaplaine* v. *Armstrong*, 21 W. Va. 211, it was held: "The remedy by attachment being authorized alone by statute, and in derogation of the common law, and,

moreover, being summary in its effects, and liable to be abused and used oppressively, its application will be carefully guarded by the courts, and it will be confined strictly within the limits prescribed by the statute." Upon page 213 of the same volume Judge Snyder, in the opinion, enforces these views, and renders the duty of the Court in this case quite clear, and that is, to hold that the attachment secures no priority in this case upon the firm assets in favor of the attaching creditors; and, unless it could be shown that the non-resident partner had some peculiar and superior interests in these assets, which could be reached by the attachment; it would be mere idleness to hold the attachment in force upon merely technical grounds. The individual partner, who is non-resident in West Virginia, can have no interest which the attachment would reach until all the debts of the firm, including that of the complainants, shall have been paid; hence it is useless to continue the attachment in force, and there was no error in the Court below in abating the same. The jurisdiction of the Court not being dependent upon the attachment, the suit should proceed to judgment. The judgment of the Circuit Court is affirmed.

Affirmed.