# CHARLESTON.

## DARBY & CO. *v.* GILLIGAN *et al.*

*(GREEN, JUDGE, Absent.)

Submitted June 6, 1889.—Decided November 20, 1889.

FRAUDULENT CONVEYANCE—PARTNERS AND PARTNERSHIP—SOCIAL ASSETS.

When one member of a mercantile firm purchases the interest of the other member, and in consideration thereof assumes to pay all the partnership debts, the firm and both members being at the time insolvent or on the eve of insolvency ; and shortly thereafter the purchasing partner, without paying any of the firm debts, conveys the whole of the assets of the late firm to a trustee in such a manner as to devote the whole thereof to the payment of his individual debts, *held*, such sale, being without any valuable consideration, is ineffectual to convert the social

---
*On account of illness.

assets into individual property, and as to the equitable rights of the firm creditors such trust deed is fraudulent and void.

*F. Woods* for appellants.

*M. H. Dent* for appellees.

SNYDER, PRESIDENT:

Appeal from a decree of the Circuit Court of Taylor county, pronounced March 28, 1887, in the suit of Darby & Co. and others against John J. Gilligan and others. The suit was brought to set aside a trust deed made by said Gilligan to John T. McGraw trustee, to enjoin said trustee from disposing of the property thus conveyed to him and to have the same applied to the payment of the plaintiffs' debts.

On September 17, 1883, the said Gilligan and James Burns entered into an agreement in writing whereby they agreed to form a partnership for conducting a general merchandising business in the town of Grafton, Taylor county, Gilligan having prior to that time been merchandising at the same place and having then on hand a stock of goods which he put into the firm at the value of $2,000.00, and Burns paid into the firm $1,000.00. Upon this capital stock they agreed that Gilligan should have a two thirds and Burns a one third interest in the assets, business and profits of the partnership. At the time this partnership was formed Gilligan was indebted to the First National Bank of Grafton and others in the sum of $1,100.00, for money borrowed and put into the mercantile business while he was conducting it alone. During the carrying on of the business by the firm, the firm contracted debts to the plaintiffs and others, and the partners so managed the business that they and the firm became indebted to insolvency. Afterwards on Feb. 27, 1885, by a contract in writing the partnership was dissolved, upon the terms, that in consideration of $1,000.00, for which Gilligan executed to Burns his note payable one year from that date, Burns withdrew from the firm and Gilligan assumed and agreed to pay all the then existing indebtedness of the firm. About two months after, on April 24, 1885, Gilligan conveyed to John F. McGraw the whole of the as-

sets of the late firm, in trust to secure all his debts, including the debts due the plaintiff and others by said firm; but in said conveyance he preferred the aforesaid $1,100.00 due to the Grafton Bank and others, the note for $1,000.00, given to Burns as aforesaid, which had been assigned by him to Anna Burns, and other individual debts amounting in the aggregate to more than the value of the assets conveyed.

Upon these facts, the plaintiffs, the appellants here, contend that this attempt of Gilligan to prefer and pay his individual debts out of the said assets is a fraud upon the firm creditors, which, according to well settled principles, a court of equity will not permit. Ordinarily the partnership estate is liable for the payment of the firm debts in preference to the individual debts of the partners. This is the right of the partners *inter se.* The creditors of the partnership have no such right of priority over the creditors of the partners individually, otherwise than by substitution to the rights of the partners *inter se.* The partners may release this right, and, if they do so *bona fide*, the creditors of the partnership can not complain; for it is not their right, except subject to the proper disposition and control by the partners themselves, to whom it belongs. This right is generally called the partner's lien. It differs from a common law lien in that it is not dependent on possession, and any single partner can convey a good title to specific chattels by a *bona fide* sale in the course of trade; and a lien does not involve the right to deal with the property, whereas the partner's equity is a right to have it applied for certain purposes, and the one partner can not assert the lien as a sole plaintiff. The existence of this equity may be explained in a variety of ways, as on an implied contract that the assets shall not be used for private purposes; on the doctrine of suretyship, since each partner is liable *in solido* for the debts, and therefore, *inter se*, virtually a surety for the co-partners for their proportions, and entitled to have the assets applied so as to relieve him. The partners have jointly the same right of absolute disposition of their private property that any individual has. They may sell it, pledge it, convert it into other forms, divide it up among themselves, devote it to the payment of all or part of the debts, or exercise other ownership

over it, subject only to each other's rights, and to the op-eration of statutes forbidding voluntary or fraudulent con-veyances, to hinder, delay and defraud creditors. It is clear from what has preceded, that while the partnership is sol-vent and going on, the partners may by unanimous assent or joint act do what they please with the assets, if the act is *bona fide.* Where in such case one partner sells or assigns his interest to the other, *bona fide*, for a valuable considera-tion or an agreement to pay the debts of the firm and in-demnify him against them, this will change the joint into a separate property. The only question is upon the *bona fides* of the transaction. If such an arrangement could not be made a partner never could retire. Bates on Part. §§ 559, 820, 824; Story on Part. §§ 97, 360.

On the other hand, according to the better reason and the weight of authority, if the firm is insolvent, or on the eve of insolvency, and both of the partners are insolvent, a purchase by one partner of the interest of the other in consideration of the former's assumption of all the debts of the firm, will be regarded as a purchase upon a consideration which is of no value whatever, and no equivalent having been given, the transfer is in effect voluntary, and its only effect, if sus-tained, would be to hinder partnership creditors, and hence is deemed ineffectual to convert the joint property into sep-arate property as against the firm creditors. *Ex parte Mayon*, 4 DeG. J. & S. 664; 11 Jar. N. S. 433; 12 L. T. N. S. 629; *Sanderson* v. *Stockdale*, 11 Md. 563; *Phelps* v. *Mc-Neely*, 66 Mo. 554 (27 Am. R. 378); *Tenney* v. *Johnson* 43 N. H. 144; *Marsh* v. *Bennett*, 5 McLean, 117; *Roof* v. *Her-ron*, 15 Neb. 73; *In re Cook*, 3 Bissell, 122; *Conroy* v. *Woods*, 13 Cal. 626; *Ransom* v. *Vandeventer*, 41 Barb. 307; *Menagh* v. *Whitwell*, 52 N. Y. 146, 163 (11 Am. R. 683); *Shackelford* v. *Shackelford*, 32 Gratt. 503; *Bank* v. *Smith*, 26 W. Va. 541.

In the case at bar, the firm as well as the individual part-ners were indebted to insolvency at the time the contract of dissolution was made, by the terms of which Gilligan as-sumed to pay not only the debts of the firm, but $1,000.00 to Burns. As the firm and Gilligan were then both insol-vent there was no valuable consideration for either this as-

sumption of the firm debts or said $1,000.00. Less than two months after this transaction, Gilligan, without paying a single firm debt, so far as the record shows, assigned all the assets in such a manner as to devote the whole of them to the payment of his individual debts. It seems to me plain, that to uphold this scheme against the rights of the social creditors would violate not only the general principles of equity, but the express provisions of our statute against voluntary and fraudulent conveyances.

It is, however, claimed for the appellees, that if this transaction is held void as to the firm creditors, then, for the like reasons, the act of Gilligan in putting his own stock of goods into the firm must be held void as to his individual creditors. But there is no analogy in the two transactions. It does not appear that either Burns or Gilligan was insolvent at that time, and it does appear that Burns paid into the concern $1,000.00, and also that the debts due the plaintiffs and others were contracted by the firm on the faith of the social assets.

For these reasons, the decree of the Circuit Court is reversed and the cause remanded.

REVERSED.    REMANDED.