# CHARLESTON.

DARBY & CO. *et al. v.* GILLIGAN *et al.*

Submitted June 7, 1892. —Decided November 26, 1892.

1. TRUSTS AND TRUSTEES—COMMISSIONERS—SALES—INTEREST—RECEIVER.

It is the practice in this State to treat trustees, special commissioners and others empowered or directed to sell as special receivers of the proceeds of sale. In such cases, except under special circumstances, such trustees and commissioners to sell are not chargeable with interest on the proceeds of sale.

2. TRUSTS AND TRUSTEES—COMMISSIONERS—SALE—INTEREST—RECEIVER.

A receiver, general or special, as the law now is in this State, has no authority to invest or loan out at interest any such fund in his hands, unless ordered by the court so to do.

3. TRUSTS AND TRUSTEES—COMMISSIONERS—SALES—INTEREST—RECEIVER.

When such trustee, as in this case, is by injunction re-

strained from disbursing or paying out such fund until the future order of the court, and he answers that "he has the fund in hand ready to disburse according to the trust-deed, or as the court may direct," if the parties in interest desire it to be paid into the hands of the general receiver, they must so move; and the trustee, who does not appear to have received interest or other profit on it, will not be chargeable with interest because he did not of his own motion cause it to be turned over to the general receiver.

4. Trusts and Trustees—Commissioners—Sales—Interest—Receiver.

The general rule is that if trustees bring suits against strangers, or strangers bring suits against the trustees, respecting the trust-funds, costs will be awarded against the losing party as in other suits. If such trustees are compelled to pay costs, the amount so paid, including proper attorney's fees, will be allowed to them in their accounts, if the litigation was just and proper.

5. Trusts and Trustees—Costs—Cestui que Trusts.

In the case of suits between the *cestui que trust* and the trustees in relation to the trust-fund, the general rule that guides rather than governs a court of equity is, that trustees shall have their costs either out of the trust-fund, or from the *cestui que trust*, personally, who may be found to be in fault; and this rule applies whether the trustees be plaintiffs or defendants.

6. Trusts and Trustees—Costs—Cestui que Trust.

A trustee, defendant, resisting the plaintiff's claim, and failing in his defence, will not be permitted to charge against the fund money expended in attorneys' fees, unless it appears that such defence was reasonable and proper.

7. Trusts and Trustees—Costs—Cestui que Trust.

In such suits a court of equity has a wide discretion in awarding costs.

*M. H. Dent* for appellants.

*F. Woods* for appellees cited 27 Gratt. 479 ; 27 W. Va. 663 ; 31 W. Va. 156 ; 30 W. Va. 443 ; 4 Rand. 282 ; 18 Gratt. 395 ; 2 Tuck. Comm. 443 ; 34 Md. 646 ; Burr. Assign. § 352 ; 33 W. Va. 247 ; 45 Md. 290 ; 29 W. Va. 795 ; 66 Md. 277 ; 31 W. Va. 157 ; Bar. L. Pr. 317 ; Dra. Attach. § 665 ; 4 H. & M. 259 ; 3 Rand. 434.

Holt, Judge :

This is an appeal taken by John T. McGraw and others, defendants below, from a final decree pronounced against them on the 25th September, 1891, by the Circuit Court of Taylor county. The cause was heretofore in this Court

upon appeal. See *Darby* v. *Galligan* (1889) 33 W. Va. 246 (10 S. E. Rep. 400.)

The facts, briefly stated, are as follows : John J. Galligan was on 17th September, 1883, a general retail merchant in the town of Grafton. On that day James Burns entered into partnership with him, putting into the firm one thousand dollars, becoming thereby a partner entitled to one third of the assets, interest on the assets, business, and papers of the new firm of John J. Gilligan & Co. then on hand, except the books, notes, and accounts on the books up to that date were to remain the sole and individual property of Gilligan. On 27th February, 1885, the firm was dissolved by written contract. Burns withdrew, turning over all the assets to Gilligan, and in consideration thereof Gilligan agreed to pay him back the one thousand dollars by note due in one year from that date, and Gilligan assumed to pay all the indebtedness of the firm accrued at that date. At this date, viz., of the dissolution, the firm, as well as the individual partners, were indebted to insolvency. Two months afterwards, viz., on the 24th of April, 1885, defendant Gilligan executed to defendant John T. McGraw, trustee, a deed of trust, assigning and transferring to him, as trustee, certain personal property, comprising the whole and every part, set out in detail, of a certain stock of merchandise, and various bonds, bills, claims and demands, a safe, fixtures and other property then belonging to Gilligan, in trust to secure various claims and demands then due or to become due, setting out a long list by name of creditors and amount of claim, and providing for any that might have been omitted, thereafter proved to the satisfaction of the trustee.

The trustee was to take immediate possession, sell, collect, and turn into money such property with such expedition as would best promote the interest of the creditors. He was to disburse the proceeds as follows : (1) Costs and expenses of executing the trust deed, including a commission of five per cent. on sale and collections. (2) Pay following claims *pro rata :* Two notes of two hundred dollars each, and one of six hundred dollars, due the First National Bank of Grafton, one of three hundred dollars to Susan Mont-

gomery, one of three hundred dollars to Annie Burns, to indemnify John Flanagan and others as Gilligan's sureties as guardian of Peter Hanley and other infant children of Patrick Hanley, deceased, and as his sureties in a certain appeal bond. (3) Pay to Annie Burns, assignee of James Burns, his former partner, the note for one thousand dollars given to him on the dissolution. (4) Pay the other claims and demands as thereinbefore set out and described, certain storehouse rent and taxes to be paid in the priority fixed by law.

Among those "other claims and demands" in the deferred class No. 4 were the claims of Darby & Co., Buck, Cator & Neer, Hurst, Purnnell & Co., Stephenson & Slingluff, Michael Riley, Armstrong, Cator & Co., and the Eagle Mill Company. These seven were creditors of the late firm of J. J. Gilligan & Co. In June, 1885, they brought their suit in equity against John J. Gilligan, James Burns, John T. McGraw, and all other parties to or secured by the deed of assignment in trust executed by Gilligan.

They charge, that, when on the 17th of September, 1883, Gilligan and Burns formed their partnership, Gilligan was largely indebted to various persons, whose names are given, and among them was indebted to the First National Bank of Grafton in the sum of two hundred dollars, with John Flanagan and John T. McGraw as sureties, a note of six hundred dollars, executed by Gilligan to John Flanagan, indorsed by Flanagan and John S. Evans, and owned by said bank, a note to Susan Montgomery for three hundred dollars and to James Flanagan as his surety in guardian bond for Peter Hanley and others in the sum of one thousand dollars;—that, when the firm of J. J. Gilligan & Co., was dissolved, on 27th February, 1885, by Burns retiring, the firm thus dissolved was utterly insolvent;—that said firm then owed the plaintiffs, respectively, the several amounts mentioned in the bill, which are also mentioned in the deed of trust, but put in class No. 4 in the order of payment; —that Gilligan then executed to Burns his note for one thousand dollars for his interest in the firm, when he in fact had no interest, the assets of the firm not being sufficient to pay the firm-debts, yet gave preference to the Burns

note in the deed of trust by putting it in class No. 3;—that the goods turned over to McGraw were goods on hand at the dissolution, and bound for payment of the firm-debts; —that the note to the bank for six hundred dollars, and the other debts mentioned above in that connection, were the individual debts of Gilligan;—that in fraud and to the prejudice and injury of plaintiffs and other firm-creditors, Gilligan provided in the deed of trust for the payment of these individual claims first, and in preference to the firm claims of plaintiffs and others.

They charge, that Gilligan and Burns are both insolvent; —that the firm of J. J. Gilligan & Co. was insolvent when Burns withdrew;—and that the goods assigned and transferred to McGraw two months afterwards were the assets of the firm of J. J. Gilligan & Co. at the date of dissolution.

They pray that defendant John T. McGraw, trustee, might be enjoined and restrained from disbursing any part of the assets of the firm of J. J. Gilligan & Co. and the assets of Gilligan conveyed by the deed of trust of 24th April, 1885, until the further order of the court;—that the said property may be first applied in payment of the claims of plaintiffs and other firm-creditors;—that said individual claims against Gilligan be postponed in payment;—that the trustee be required to pay to the general receiver all proceeds of sales and collections; and for general relief.

The injunction was granted, and, the bond required being given, John T. McGraw as trustee demurred; and his demurrer was overruled.

Burns answered, alleging that the firm of J. J. Gilligan & Co. was at the time of its dissolution indebted to certain creditors named. The rest of the bill he impliedly admits to be true.

Various orders of publication were from time to time taken and executed against various non-residents defendants.

John T. McGraw, trustee, filed his separate answer on August 12, 1886, in which he says "that he executed his duties under said trust-deed to the best of his skill and judgment;—that he now has in his hands a fund realized out of the assets, and to be disbursed under said trust, the

sum of one thousand, six hundred and fifty four dollars and forty three cents, which he is ready to disburse according to the provisions of said trust-deed, or as the court may direct; and he files as an exhibit a statement of moneys collected and disbursed, showing total expenditures, four hundred and sixty one dollars and twenty cents which includes the item of one hundred and five dollars and seventy eight cents for his commission.

At the same time John F. Gilligan filed his answer. Among other things he says, that the debt of two hundred dollars due the bank, the six hundred dollars due the bank, the three hundred dollars due Susan Montgomery, and the one thousand dollars due the Hanley heirs were his individual debts, and that the proceeds were invested in and became a part of the stock of goods he owned himself on the day the partnership of J. J. Gilligan & Co. was formed by taking in James Burns, who put in the one thousand dollars;—that he was not insolvent, and was guilty of no fraud; but his answer shows that the firm of J. J. Gilligan & Co. was insolvent, as it turned out. He exhibits with his answer the articles of partnership with Burns and the contract of dissolution.

The deposition of Gilligan was taken. In it he says these individual debts mentioned in the deed of trust are all just and unpaid, and the money was invested in the stock of goods which he had on hand when he went into partnership with Burns, with the exception of three hundred dollars borrowed of Annie Burns, seventy five dollars of which was borrowed by the firm;—that he turned over to trustee McGraw several hundred dollars' worth of goods, which he had purchased after the dissolution of the firm;—that he had no fraudulent design etc., in making the deed of trust.

The deposition of John T. McGraw was taken, which is a mere formal proof of invoices, collector's disbursments etc., about which there is no controversy.

On that appeal the court held that it then appeared from the record that the claim of six hundred dollars due the First National Bank of Grafton, among others, was an individual debt due from defendant Gilligan; that on the 27th day of February, 1885, when the contract of dissolu-

tion was made by which Burns went out, and Gilligan assumed the firm-debts and proceeded to carry on the business alone, "the firm, as well as the individual partners, were indebted to insolvency;" so that the note of one thousand dollars then given by Gilligan to Burns for capital put in was without valuable consideration for either this assumption of the firm debts or for said one thousand dollars.

Less than two months after this transaction, Gilligan without paying a single firm-debt, as far as the record shows, assigned all the assets in such a manner as to devote the whole of them to the payment of his individual debts, and, the learned judge might have added, thereby attempting to give and by lien on the assets secure to Burns, the retiring partner, a preference for his one thousand dollars capital put in over the claims of plaintiffs and other firm-creditors. "To uphold this scheme against the rights of the social creditors would violate not only the general principles of equity, but the express provisions of our statute against voluntary and fraudulent conveyances." Therefore the decree complained of was reversed, and the cause remanded for further proceedings, according to the principles stated and directions given in *Darby* v. *Gilligan*, 33 W. Va. 246 (10 S. E. Rep. 400) and further according to the rules and principles governing courts of equity.

When the cause came back to the Circuit Court, that court, on 14th April, 1890, again referred the cause to its commissioner, with directions to ascertain and report all the social or copartnership debts of said J. J. Gilligan & Co., to whom due, the amounts thereof, including interest and the priorities, if any; also to ascertain and report the copartnership or social assets subject to the payment of said copartnership debts. At the same time Wood, Bacon & Co., parties defendant, filed their answer, setting up their claim against J. J. Gilligan & Co., joining in plaintiff's allegation of fraud against the trust deed to McGraw and in their prayer for relief. Commissioner St. Clair reported, exceptions were filed, and on the 25th September, 1890, the exception was sustained, and the report was recommitted to execute the former order of April 14, 1890.

On 30th September, 1890, the First National Bank, John Flanagan, John T. McGraw, John S. Evans, and James Flanagan, defendants, filed their joint answer to plaintiffs' bill, in which they set up and exhibit a note for six hundred dollars, dated January 29, 1885, executed by John J. Gilligan & Co. to order of John Flanagan, indorsed by John Flanagan, J. T. McGraw, John S. Evans and James Flanagan to the First National Bank of Grafton, and proved by the cashier; that it was not paid, but a new note was given by the indorsers in substitution. To this evidence plaintiffs excepted that the date was different from the one mentioned in the deed of trust, that being the———day of February, 1885, and that this matter had been adjudicated by the Supreme Court. These defendants do not attack the deed of trust, but claim this debt under it as a firm-debt, and the first secured.

On 30th December, 1890, Commissioner St. Clair returned his second report, in which he reports the seven firm-debts of the seven plaintiffs, and various other claims. He also returns a settlement of the accounts of John T. McGraw as trustee, charging him with principal, after paying all expenses, one thousand six hundred and fifty four dollars and forty three cents, with interest from July 18, 1885, to January 2, 1891, five hundred and forty one dollars and fifty cents, making two thousand one hundred and ninety five dollars and ninety three cents, crediting this with disbursements for taxes, ninety dollars and ninety cents, leaving balance due Gilligan & Co. in hands of trustee, two thousand one hundred and five dollars and three cents. McGraw also filed the attorney's receipt for his fee, eighty five dollars, for defending trustee in this suit, which the commissioner refused to allow.

To this report the bank, John Flanagan, and others, defendants, excepted, because the commissioner failed to report their debt of six hundred dollars as first in priority to be paid out of the social assets. J. T. McGraw excepted; (1) because it charges him with interest on the money in his hands, which money he held undisbursed by reason of the injunction, and subject at all times to the order of the court as proffered and stated in his answer;—(2) because

the commissioner fails to allow the taxes and attorney's fee paid by him ;—(3) because the commissioner fails to separate the individual accounts and funds of Gilligan from the partnership assets; (4) because the commissioner improperly states the partnership debts to be paid out of the social assets.

Various depositions were taken and returned with the report, that of Cashier Mallouce, already alluded to, of other witnesses showing the payment of various items of taxes by the trustee, the depositions of defendant Gilligan, and various checks and papers exhibited therewith, the deposition of defendant James P. Burns, the trustee's statement of taxes paid and attorney's fee of eighty five dollars and tax receipts lifted.

On 16th January, 1891, the cause came on to be heard, when the court overruled all these exceptions, and confirmed said report No. 2, and proceeded to decree specifically the following firm-debts to be paid out of the social assets in the hands of the trustee; (1) Certain taxes, amounting to fifteen dollars and twenty five cents; (2) in priority eleven claims of equal dignity, including the claim of the seven plaintiffs, and four others on the same footing; (3) the claim of Wood, Bacon & Co. of three hundred and sixty four dollars and seventy seven cents; (4) the said debt of the First National Bank, eight hundred and one dollars and thirty cents—decreeing the same against John J. Gilligan and James P. Burns, late partners composing the firm of John J. Gilligan & Co., and directing Trustee McGraw to disburse the sum of two thousand one hundred and five dollars and three cents on the said several claims in the order of priority set forth; and it appearing that there was nothing left to pay on the claims of the individual creditors of John J. Gilligan, "the cause was retained on the docket for the purpose of any order that the individual creditors of Gilligan may desire to have made in the cause;" and the court, being of the opinion that the costs of suit should not be paid out of the fund in the hands of the trustee, gave a decree for costs against defendants John J. Gilligan, James P. Burns, the First National Bank of Grafton, John Flanagan, James Flanagan, John S.

Evans, A. Burns, Susan Montgomery, and James Jennings. From this decree John T. McGraw, as trustee and in his own right, the First National Bank of Grafton, John Flanagan, James Flanagan, and John S. Evans have brought the cause here by appeal.

The appellants (defendants below) make the following assignments of error, that is to say: The Circuit Court erred (1) in charging the trustee with interest on the whole sum of one thousand, six hundred and fifty four dollars and forty three cents in his hands from July 18, 1885; (2) in not allowing said trustee the reasonable attorney's fee paid by him; (3) in not allowing the six hundred dollar debt of the First National Bank of Grafton as being a partnership-debt, the first secured in said deed of trust as first in priority out of the partnership funds; (4) in postponing said six hundred dollar bank debt to the debts of Michael Riley and Stephenson & Slinghuff, the former appellants in this cause; (5) in postponing said six hundred dollar debt to the debts of Darby & Co. and the other original plaintiffs in this cause; (6) in postponing it to the debts of Loudanslager & Boerner, Wheat & Naylor, Austin, Nichols & Co., and F. M. Talbot & Co., who were neither of them parties plaintiffs, and who have never filed an answer or made any appearance whatever in the cause; (7) in preferring the debt of Wood, Bacon & Co. to said six hundred dollar bank debt; (8) in not, after paying, as just said, six hundred dollar bank debt, then distributing the residue of the fund *pro rata* on all the firm debts after first deducting costs of suit; (9) in requiring appellants to pay the whole costs of suit, part of which, at least, should have been paid out of the assets.

The appellees Wood, Bacon & Co. make the following cross assignments of error to their prejudice in the decree appealed from: (1) It was error to make any decree when the defendants George Wheat, John S. Naylor, James Maxwell, Marcus Baer, Henry Baer, Bernard Baer, and the four infant children of Michael Hanley were not before the court. (2) It was error to prefer any of the four claims of Loudanslager & Boerner, Austin, Nichols & Co., F. M. Talbot & Co., and Wheat & Naylor, and to give them or any of

them priority over the claim of Wood, Bacon & Co. (3) It was error not to charge the claim of Wood, Bacon & Co. as a lien on the fund in the hands of Trustee McGraw next in priority after the seven claims of plaintiffs.

In regard to exception No. 1, charging Trustee McGraw with interest. If this had been defendant McGraw's debt, or a debt bearing interest, and it was attached, or he was enjoined or restrained from paying it, then, if he wishes to stop the running of interest, he must himself, as a general rule, propose to pay it into court, "because the owner of the debt has a right to the interest, for money is worth its interest; and, if the holder does not think so, he has always the privilege of bringing the money into court; and because if the debtor could, under this restraining process, hold the debt for years without interest, it would offer a strong temptation to him to stir up claims of this kind, and to throw all possible obstacles in the way of a decision of the questions raised." *Templeman* v. *Fauntleroy*, 3 Rand. (Va.) 434-447 (1825) citing *Tazewell* v. *Barrett*, 4 H. & M. 259, and *Hunter* v. *Spotswood*, 1 Wash. (Va.) 145. See, also, *Ross* v. *Austin*, 4 H. & M. 502.

Even in such cases the rule is not uniform. See a discussion thereof in Drake, Attachm. §§ 664, 665. The author regards the better rule to be that the debtor must make it appear that he has not used the money, and then he will not be chargeable with interest.

But this is not that case. Here defendant McGraw is a mere trustee, holding the fund in trust for those who may be ultimately found entitled. After he was restrained by order of the court from paying it out until further order, he filed his answer, stating the amount in his hands, and that "he is ready to disburse it as the court may direct." The court, with the implied assent of plaintiffs, virtually made him its special receiver, or recognized him as such—in fact the restraining order directs or permits him to sell and collect, a practice quite common with us in dealing with commissioners to sell, trustees and others of like functions; and it is not the duty of a receiver, general or special, to invest or put out at interest such funds in his hands, unless directed so to do by order, general

or special, for he does not know, as in this case, at what time he may be ordered to pay it out.

If any party in interest, after the trustee had virtually brought it into court, desired it to be turned over to the general receiver, it was his place to move in the matter. Having received no interest or made no other profit on the fund, but holding it subject to the order of the court, it would be a harsh rule to make this trustee pay five hundred and forty one dollars and fifty cents interest on a trust fund that by order of court he was restrained from paying out until further order, and might at any moment be called on to disburse or to pay into court.

Appellants' assignments of error No. 2 and No. 9, as to allowance of eighty five dollars attorney's fee paid by Trustee McGraw in defending this suit and costs of suit generally: (1) "The general rule seems to be that if trustees bring suits against strangers, or strangers bring suit against the trustees, respecting the trust-fund, costs will be awarded against the losing party as in other suits." "If executors or trustees are compelled to pay costs, the amount paid may be allowed to them in their accounts if the litigation was just and proper; but if the litigation was improper and vexatious, courts may refuse to allow such charges." 2 Perry Trusts, § 893. (2) "It is difficult to state, as a general proposition, any rule as to costs in suits between *cestui que trust* and trustees in relation to the trust-fund." "The general rule is that trustees shall have their costs, either out of the trust fund, or from the *cestui que trust* personally;" and this rule applies whether the trustees are plaintiffs or defendants. Id. §§ 896–899.

This was a controversy between the plaintiffs, who, though mentioned as postponed creditors in the deed of trust, were attacking it as fraudulent and void in that it gave preference to the grantor's individual creditors. This was the main, if not the only controversy. The trustee was also interested to some extent as indorser of one of the individual claims preferred. The attorney's fee paid by the trustee was paid for services rendered in resisting the claim of the plaintiffs, who succeeded. Therefore such attorney's

fee was properly disallowed, and also, as we think, the court properly gave no costs of suit against the trust-fund. See discussion of the subject by BALDWIN, J., in *Beverley* v. *Brooks*, 4 Gratt. 187–231, citing 3 Daniell, Ch'y Pr. 1516.

The Circuit Court gives it as its opinion that the costs of this suit should not be paid out of the assets in the hands of the trustee, but gives no decree against him for costs; only refuses to allow him the sum paid as attorney's fee in resisting the plaintiff's claim decreeing costs against the individual creditors, who failed. Therefore we do not think either of these two assignments of error well taken. See 2 Lewin, Trusts (1 Amer. Ed. from 8th Eng. by Flint.) top p. 634; Hill, Sur. (Whart. Ed.) side p. 551.

Appellants' assignment No. 3. In not treating the six hundred dollars bank-debt as a firm-debt, and because preferred in the deed of trust in not giving it priority out of the partnership funds. In the deed of trust Gilligan treats this six hundred dollars debt as his private or individual debt; in his sworn answer to the bill he states it to be his individual debt; and in his first deposition he says it is his individual debt; and in his last deposition, although he says it was a firm-debt, yet he admits he used part of it for private purposes. Plaintiffs' bill charged it as his individual debt; that was taken as true by the bank, and all the other parties interested in the question; and the decision of the court in *Darby* v. *Gilligan* is based in part on the fact that it was Gilligan's individual debt; and so it will have to be now regarded for the purposes of this case.

Even if it were otherwise, the bank does not impeach the deed of trust as in any respect invalid, but founds its claim of preference solely upon a preference given in the deed of trust which, as to them and others before the court, has been by this Court pronounced to be wholly fraudulent and void.

Wood, Bacon & Co., in their answer filed, join in plaintiffs' attack upon the deed of trust as fraudulent, and therefore their claim should, as to the parties before the court, be ranked next in priority after the seven claims of the

seven plaintiffs.   *Clark* v. *Figgins*, 31 W. Va. 157 (5 S. E. Rep. 643).   The courts, circuit as well as appellate, ought to have the right to expect that the parties in some way have been brought before the court before the cause is submitted for final hearing.   The counsel themselves, before submitting it, should make it a point to go over the papers carefully; yet how often it happens that the papers are passed to the Circuit Court for final hearing with grave rights involved, relating perhaps to the sale of real estate, when the party has not appeared, the order of publication, if taken, has not apparently been executed, and that which does not appear does not exist, or other process has not been saved, or infants have no guardian *ad litem*, or none who answer; and so the Circuit Court, unless it goes through a labor which ought not to be cast upon it, pronounces a decree for the sale of the party's land, or affecting some other equally important right, without jurisdiction of the person.   Some such oversights must be expected, but they ought not to be so common.

Defendants Simon Baer & Sons, though not served, appeared and demurred, but the demurrer was not noticed by the court, nor passed upon except inferentially.   George Wheat, John S. Naylor, and James Maxwell, partners trading as Wheat & Naylor, Peter Hanley, Ellen Hanley, Frank Hanley, and Michael Hanley, infant children of Patrick Hanley, deceased, are mentioned and attempted to be secured as creditors by Gilligan in the trust-deed, and are made parties defendant by name.   After careful scrutiny of both records, the old and the new—at this stage of the cause I should scarcely have thought to look, but for the suggestion of counsel—I can not see that these defendants have appeared or in any way been brought before the court. But I notice that the clerk certifies that so important a paper as report No. 1, made by Commissioner St. Clair in execution of the order of reference of September 25, 1890, can not be found.   The missing process executed on these defendants, who seem to be residents, and the answer of the guardian *ad litem*, will probably turn up when the cause goes back.   It would be error, of course, to make any decree apparently affecting their interests, in their absence.

For the reasons given, the decree complained of is reversed, and the cause remanded, with directions to see that all proper parties are before the court, and to have the proper accounts taken, according to the principles laid down here in *Darby* v. *Gilligan*, 33 W. Va. 246 (10 S. E. Rep. 400) and in *Baer* v. *Wilkinson*, 35 W. Va. 422 (14 S. E. Rep. 1) in order to a final decree, with costs to appellants.

REVERSED. REMANDED.