# CHARLESTON

DIGMAN v. WEST et als.

Submitted February 13, 1912.  Decided November 12, 1912.

1. VENDOR AND PURCHASER—*Liens—Staisfaction—Set-Off.*

   One who pays off a prior lien on land purchased by him to protect his title may set-off the amount so paid against his purchase money notes in the following order: (1) those unassigned in the hands of the vendor, and (2) those assigned in the inverse order of the assignments. (p. 298).

2. SAME—*Prior Liens—Payment by Purchaser—Set-off—Waiver.*

   Neither failure to claim such right of set-off in response to a notice of an assignment nor payment of the prior lien after such notice, nor insolvency of the assignor after the notice, nor all of them combined, bars such right of set-off. (p. 298).

3. COSTS—*Apportionment.*

   In a suit by assignees against a debtor having a right of set-off, denied by all the assignees, the court may, in its discretion, refuse costs to any of the parties, the assignor, ultimately liable for the set-off, being insolvent. (p. 299).

4. VENDOR AND PURCHASER—*Purchase Money—Prior Liens—Payment by Purchaser—Set-Off—Costs.*

   A purchaser, paying off a prior lien with costs of a suit to enforce it, is not entitled to set-off such costs against his purchase money notes, in the absence of evidence showing inability safely to pay off the lien without an adjudication thereof. (p. 299).

Appeal fom Circuit Court, Tucker County.

Action by William J. Digman against Georgianna West and others. Judgment for defendants, and plaintiff appeals.

*Affirmed.*

*Cunningham & Stallings,* for appellant.

*J. W. Harman* and *A. Jay Valentine,* for appellees.

POFFENBARGER, JUDGE:

The appellant, plaintiff below in a suit to enforce a vendor's lien, complains of the allowance, to the defendant, of a credit of $120.30, the amount she had been compelled to pay on account of a prior lien on the property, and also of the refusal of the court to allow him his costs in the suit. His decree is for $115.70, without costs, and he claimed $244.37 with costs. The appellee, Mrs. West, also complains of the disallowance to her

of the costs of her defense to the suit for the prior lien, amounting to $31.86.

The prior lien, paid by Mrs. West, was for purchase money in a prior sale of the property by one C. E. Moore to W C. Stalnaker, her vendor, which said Moore had assigned to Poling and Shaffer. It was represented by two $50.00 notes A few months after the conveyance of the property, consisting of certain town lots, Stalnaker resold and conveyed it to Mrs. West for $1,350.00, C. E. Moore joining in the deed. Non-negotiable notes for part of the purchase money in this transaction, secured by a vendor's lien, were given, one of which for $200.00 was assigned to Digman and two to S. A. Moore, one for $200.00 and the other for $150.00. Fearing trouble from prior liens, Mrs. West stipulated in her deed for the right to "take up any such obligations" of Stalnaker "and to be given proper credit for the same on her payments." At the dates of the assignments to Digman and S. A. Moore a suit by Poling and Shaffer against Mrs. West to compel payment of the C. E. Moore notes was pending. Both assignees claim to have given her notice of their respective assignments and deny that she gave them any notice of the equitable claim, and there is controversy as to which of the assignments was made first. By an amended bill S. A. Moore was made a party and pleadings were filed, submitting Mrs. West's claim of credit against S. A. Moore, in the event of her inability to obtain it against the Digman note, as prayed for in her answer to his bill.

There is conflict in the evidence as to whether Mrs. West gave any notices of her equity to Digman and Moore in response to their several notices of the assignments. Her husband swears he did respond for her by letter, setting forth the probability of her liability on account of the C. E. Moore notes, but produces no copies of the letters. On the other hand, both Digman and Moore deny the receipt of such letters and any response of any sort for several months in which period Stalnaker became insolvent, if indeed he was not at the time, another controverted question. Digman and Moore adduced evidence of his solvency at the time, which West denies.

As to the priority of the assignments there is some conflict. Digman and Stalnaker say Digman's was first, but West produces a letter, giving notice of that assignment dated Oct. 21,

1908, and the envelope in which it was received, post marked
October 22, 1908, and Moore's notice bears date June 10, 1908.
Digman and Stalnaker both say, however, his assignment was
made in January or February, 1908, and the former says he did
not give immediate notice thereof.    Moore's notice was un-
doubtedly first.    Besides the Digman assignment was probably
not absolute, since he took it for a debt of $175.00, then due from
Stalnaker, evidenced by his note, which he never surrendered and
on which he subsequently acquired a judgment.    We think these
circumstances warranted the trial court in saying the Digman as-
signment was subsequent.    Evidently the note was originally
only collateral security in the hands of Digman, and as to the
date of the assignment his evidence is uncertain and does not
harmonize with the date of his notice.

From this conclusion it follows that the right of set-off, if
any, is against the Digman note, as the trial court held.    A pur-
chaser who pays off a prior lien on land bought by him to pro-
tect his title may set-off the same against purchase money notes
in the hands of assignees thereof, and the assignees are subjected
to it in the inverse order of their assignments, *provided* the as-
signments are for value and all of the notes have been assigned.
If any remain in the hands of the vendor unassigned the right
of set-off is against them first.    *Armentrout* v. *Gibbons,* 30 Grat.
645.

If, as Digman contends, Mrs. West failed to respond to his
notice of the assignment, her silence did not amount to a repre-
sentation, inducing in any sense the purchase of the note.    Dig-
man had bought it before he gave the notice.    Nor did the no-
tice cut off her right to discharge the prior lien on her property.
She made no voluntary payment to Digman's assignor nor volun-
tarily purchased any set-off to the note.    She had to pay off that
lien in order to protect her interests, which obviously she had
the right to do, even though such payment should prevent the
assignee from collecting his note in whole or in part.    He ob-
tained no greater right by the assignment and notice than his as-
signor had.    Her equity against the note ante-dated his notice,
and it was not the purpose of the statute to interfere with equi-
ties of that sort.    It says the assignee "shall allow all just dis-
counts not only against himself, but against the assignor, before
the defendant had notice of the assignment."    Code, ch. 99, sec.

14. Surely, this prior lien was the basis of a just discount against the assignor, which attached before the notice.   The purpose of this statute was to apply the equitable rule in actions at law by assignees of choses in action.   Hence, we must determine' what are just discounts by reference to equity principles.

If Mrs. West's silence gave to Digman a sense of security, inducing him to refrain from proceeding against the assignor until the latter became insolvent, as is claimed, it does not bar her right of set-off or credit for what she was compelled to pay.   The notice suggested no purpose or intent on his part to rely upon the assignor's solvency, nor is there any reason to suppose Mrs. West knew anything more about his financial condition than Digman.   To work an estoppel there must have been a misrepresentation by silence or otherwise with intent to mislead to his injury the person to whom it was made.   That element is wholly lacking here.

As the real debtor, Stalnaker, was insolvent, Mrs. West could not safely make payment to Digman without claiming the credit he refused to allow her, because all of the other notes had been assigned and some of them paid off, and Moore denied her right to credit on the debt held by him, we think the court could in its discretion, refuse cost to any of the parties as it did.   In substance and effect, the purpose of the litigation was the apportionment of a fund to which all the parties had the right to resort. Principles announced in *Darby & Co.* v. *Gilligan,* 37 W. Va. 59, sustain this conclusion.

Mrs. West's cross-assignment of error for refusal to allow her credit for costs she paid in the suit of *Poling and Shaffer* v. *Stalnaker and others,* is not well taken.   She shows nothing except her payment of it as a result of litigation to enforce payment of a debt she was indirectly bound to pay, and which she had the right to pay under a stipulation in her deed.   No doubt the trial court regarded this expenditure as voluntary and unnecessary, and refused to allow it as a credit for that reason.   Whether Stalnaker claimed any credit or made any defense, the record does not say, nor does it in any way indicate the existence of any obstacle to the discharge of the lien without litigation or expense.

Seeing no error in the decree, we affirm it.

*Affirmed.*