# CHARLESTON.

ELK MILLING & PRODUCE CO. *et al.* v. LEWIS *et al.*

Submitted November 1, 1916.   Decided November 21, 1916.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—*Trustees—Duties of.*

   While performed in course of administration of the proceeds of property assigned to secure creditors, the acts of the trustee are subject to the regulations prescribed by chapter 87, Code, for the government of fiduciary proceedings, and with them such a trustee is required to conform in administering funds under his control, in order to avoid the penalties therein prescribed.   (p. 234).

2. SAME—*Trustees—Interest—Liability for.*

   A trustee who, without sufficient cause therefor, unduly delays application of funds, entrusted to his management, to the payment of the liabilities secured, is chargeable with interest thereon after the expiration of six months from the receipt thereof until the next ensuing annual settlement of his accounts required by chapter 87, Code, and thereafter on the balance therein found to be due from him, unless (as provided in section 7 of that chapter) ''within six months after the end of any one year'' he gave ''to the parties entitled to the money received in such year a statement of the said money and actually settled therefor with them''. (p. 235).

3. SAME—*Interest—''Year.''*

   A year, as used in point two, means one year from the receipt of cash collections pertaining to the trust funds.   (p. 235).

Appeal from Circuit Court, Kanawha County.

Action by the Elk Milling & Produce Company and others against C. C. Lewis, Jr., as trustee, and others. From decree for the named defendant, plaintiffs appeal.

*Reversed and remanded.*

*Alexander & McCabe* and *R. Kemp Morton,* for appellants.

*Price, Smith, Spilman & Clay* and *E. C. Harrison,* for appellee.

LYNCH, JUDGE:

By a deed dated December 23, 1910, Hannah C. Keeney and husband conveyed to C. C. Lewis, Jr., the real estate owned by her, in trust for the payment of her indebtedness. Parcels of the lands then were encumbered by prior liens. The trustee sold some of the tracts. Others remain unsold. The money received from sales made under authority of the deed he had not distributed to the general creditors secured when this suit was brought, except that part thereof required to discharge specific prior liens. These he paid out of the proceeds derived from the sale of each tract encumbered. To enforce an accounting and distribution of the money in his hands to the pro rata satisfaction of the several debts secured, and for general relief, Elk Milling & Produce Company and others, creditors of Mrs. Keeney, brought this suit in the court of common pleas of Kanawha county.

The commissioner to whom the cause was referred to ascertain and report the property conveyed and state an account with the trustee, ascertained a balance of $2452.65 in his hands, without regard to commissions or interest, the commissioner treating the one as an offset against the other. The court sustained plaintiff's exception to the report, because it did not charge interest after thirty days from the receipt of the money to the date of the report, and by its decree required Lewis to account for the amount of interest reported to have accrued within the time stated. This decree the circuit court, on appeal, reversed; and plaintiffs have appealed to this court.

So that the sole question presented for adjudication is whether interest should be charged against the trustee, and, if so, for what period. Except to sell property, collect the purchase money and pay prior liens, Lewis did nothing towards a complete execution of the trust reposed in him. This statement is not intended to impute to him indifference or wilful negligence. He was simply inactive in essential matters, and permitted delay when he should have been diligent. To extenuate this delay and obviate the interest charge, he urges the presentation of two notes made by Mrs. Keeney for payment out of the assets in his hands, which he says she advised him had theretofore been discharged. Of the existence of this undetermined liability other claimants were advised by Lewis, and to them he expressed a willingness to be governed by their direction.

Section 6a, ch. 72, Code, in express terms says "all such trustees" in assignments for the benefit of creditors "shall appear before some one of the commissioners of the county court before which he qualified as such trustee, and lay before such commissioner a report of his receipts and disbursements, and his vouchers for the same, in all respects and with like effect as is provided for fiduciaries generally by chapter 87 of the code". This provision, introduced into the statute in 1905, evidently was intended to classify trustees in assignments for the benefit of creditors among personal representatives of decedents and other fiduciaries, and to subject them to the same rules and regulations in the administration of the property or funds entrusted to them.

While neither that section nor any of those contained in chapter 87 expressly require the payment of interest by trustees or fiduciaries, they do, when read together, as clearly they must be, govern the administration of the property of insolvent debtors in like manner and with the same effect as they do the administration of the estates of deceased debtors. So construed and interpreted, they require trustees in an assignment for the benefit of creditors of an insolvent debtor, or in one that operates as such security under the laws of this state, to enter into bond "in the manner and with the effect as a personal representative of the estate of a decedent is

qualified''; the appointment of appraisers of the estate of the insolvent in the same manner and by the same authority that appraisers are appointed for the estate of a decedent, and that such appraisers when appointed shall perform the same duties; and that ''all such trustees'' shall settle their accounts before a commissioner ''in all respects and with like effect as is provided for fiduciaries generally by chapter 87 of the code''. Hence, §6a, ch. 72, is engrafted upon the provisions of chapter 87. It makes essential performance by him of the duties therein prescribed. Among them are these requirements: the return of an inventory of all property the possession of which is received by him or entrusted to his management, within four months after his appointment, or within the same period after any other such estate shall come to his possession or knowledge. Failure to comply with these provisions renders him liable to the punishment prescribed by section 2; and failure within six months after selling trust property to return to the county clerk an inventory of the property sold and an account of the sales, unless the property be sold under a decree, operates to deny him right to the commission otherwise allowed on funds in his hands for administration under the deed. §3. ''If any fiduciary mentioned in this chapter (including such a trustee) shall, by his negligence or improper conduct, lose any debt, or other money, he shall be charged with the principal of what is so lost and interest thereon in like manner as if he had received such principal''. §5. The succeeding section requires annual settlements of the accounts of fiduciaries, within six months after the end of each year of administration, before a commissioner of accounts. Non-observance of this requirement is punishable as provided in sections 6 and 7; but the latter section sanctions the exoneration of a fiduciary or trustee from the penalty prescribed by the two sections if he ''shall have given to the parties entitled to the money received in such year a statement of the said money and actually settled therefor with them.'' Sections 19 and 20 require a report of any settlement by a commissioner of the accounts of a fiduciary or trustee pursuant to chapter 87 to be filed in the office of the county clerk; and sections 21 and 22 authorize its correction,

confirmation, or recommittal if error therein be found, and, if none be found, its recordation in such office in a book specially provided for that purpose. To the extent to which the report is confirmed it "shall be taken to be correct except so far as the same may in a suit in proper time be surcharged and falsified". When it appears from a report so made and confirmed "that money is in the hands of any such fiduciary the court before which the report so comes may order the same to be invested or loaned out, or make such other order respecting the same as may seem to it proper" (§23), or "may order payment of what shall appear due on such account to such persons as would be entitled to recover the same by a suit in equity" (§25).

Lewis doubtless inadvertently failed to comply with the material provisions of these sections, and did not resort to any method, by suit or otherwise, to abbreviate the delay caused, as he contends, by the controverted liabilities to which we have referred. He did not lay before a commissioner of accounts for settlement an account of moneys received or disbursements made by him. .He did nothing to consummate the purposes of the conveyance further than to convert the major portion of the property into cash, or notes thereafter reduced to cash, which, so far as disclosed, still remained in his hands when this suit was brought, except that part thereof applied to the satisfaction of liens recorded or docketed prior to the assignment. He did nothing in compliance with any material command of the statute. In the meantime, interest on the debts secured was accumulating, without any corresponding increase in the fund set apart for their payment.

While, as observed, there is no express statutory direction for the payment of interest by a trustee or fiduciary, such payment is required impliedly in section 5, chapter 87. For therein it is provided in substance that if a trustee, as well as any other fiduciary included within its terms, shall, by negligence or improper conduct, lose any debt or money he shall be charged with the principal thereof and interest thereon, in like manner as if he had received such principal. That is, whether the fund suffers diminution when readily avoidable, or he retains it intact by proper management, he is, under

that provision, by fair inference, in either event chargeable with interest thereon. Escape from this conclusion seems impossible, in consequence of any just or reasonable interpretation of the obvious purpose of that chapter.

Payment of interest will not be required of a fiduciary who is enjoined from distributing the funds in his hands ready for distribution to those entitled thereto. *Darby* v. *Gilligan*, 37 W. Va. 59. Nor will he be chargeable with interest except where special circumstances seem to require. *Crawford* v. *Fickey*, 61 W. Va. 544. But interest is a proper charge against a trustee in an assignment, whose settlement shows a balance in favor of the fund in his hands, although the charge may not properly enter into the account as part of the interest bearing principal for subsequent years. It then is to be carried as a separate item until final settlement, except where the fund or a sufficient part of it has been applied to the liquidation of debts secured. In that event, his accounts will be settled upon the same basis as accounts between ordinary debtors and creditors. *Van Winkle* v. *Blackford*, 54 W. Va. 621, 652. That rule must be applied here, because virtually the final settlement necessarily must be between the trustee and the creditors of the grantor.

As observed, Lewis did not lay his accounts before a commissioner except as ordered in this cause. While it may be he did not at any time theretofore have in hand assets sufficient to discharge the indebtedness, for the payment of which that fund was pledged, a condition not disclosed; he did have enough to make a pro rata distribution to the creditors, taking into consideration the two controverted notes as probable charges. Payment of any part of these he could properly withhold until their validity as unpaid liabilities finally was determined. But he took no steps whatever to expedite an adjustment of the claims of the creditors, or place himself in a position where no default could be charged against him, except to notify other creditors of the contested claims and offer to submit to their direction. This does not furnish a sufficient cause to excuse the nonpayment of interest. A trustee is the intermediary between the debtor and creditor, and charged with the duty to be active and diligent in the

consummation of the purposes of the trust, the conversion of the trust subject into disbursable funds, and their speedy application to the total or partial satisfaction of the indebtedness secured accordingly as encumbrances will permit.  He can not be permitted to be indifferent in discharge of the duties imposed by acceptance of the trust relation, and indefinitely remain inactive in the performance of such duties.  No such circumstances as will justify a delay of three years and a few months before the suit was brought appear from the facts proved or admitted.  The exercise of a reasonable degree of diligence would have effected a more prompt and early adjustment of all matters necessarily involved in execution of the trust.  A just regard for the rights of the debtor and her creditors required greater promptitude.  Nothing in the situation or condition of the trust fund impeded a just and speedy termination of the matter involved.  The presentation of the two contested notes, instead of excusing the prolonged delay, furnished a substantial reason for greater diligence in an effort to secure their adjudication or adjustment.

But the basis assumed by the common pleas court for the computation of interest is not, as we conceive, the correct one.  Thirty days after recepit of the money is too brief as the date from which to make such computation in cases of this character.  A greater delay after cash payments were made should have been allowed as an opportunity to permit a pro rata distribution to creditors or to make some other disposition of the fund paid for their benefit. The proper method of settlement of fiduciary accounts except in the case of guardians, the method apparently contemplated by chapter 87, is to compute interest on each item, where there are several, from six months after the date of the receipt thereof to the date of the first succeeding annual settlement made as required by that chapter.

From what has been said, the conclusion readily deducible is that the common pleas court erred only in requiring the payment of interest from thirty days instead of six months after receipt of the items composing the fund in the hands of the trustee, and that the circuit court erred in exonerating

the trustee from the payment of interest in any event. This conclusion operates to reverse the decree of the circuit court, and the decree of the common pleas court in so far as it fixed the period for the computation of interest, and to remand the cause to the common pleas court, with direction to ascertain the interest chargeable to the trustee during the period determined herein, and for further proceedings in the cause conformably with the principles stated and otherwise according to the principles governing courts of equity.

The objection that, as the bill is silent on the question of interest on the funds controlled by Lewis, none can be allowed is made and urged, evidently under a misconception of the proper procedure applicable to such cases. The bill prays an accounting, and the ascertainment of interest necessarily enters into that process. The settlement of an account implies consideration of all the elements and factors essential to its complete adjustment, one of these factors being the computation of interest.

Decrees reversed and cause remanded.

*Reversed and remanded.*