CAFLISCH LUMBER COMPANY *et al. v.* LAKE LYNN LUM-
BER COMPANY *et al.*

(No. 8561)

Submitted February 16, 1938.   Decided March 8, 1938.

*J. V. Gibson, M. C. Snyder* and *Moreland & Guy,* for
appellants.

*Donald G. Lazzelle* and *Thomas Watson,* for appellees.

HATCHER, JUDGE:

This is a sequel to *Stybr and Watson* v. *Caflisch Lumber Co.,* 110 W. Va. 337, 158 S. E. 669. In that suit, an injunction granted by the circuit court against an alleged trespass to certain land in West Virginia, was dissolved here, and the bill subsequently dismissed in the circuit court. Pending the litigation, Stybr and Watson conveyed the land to Lake Lynn Lumber & Supply Company (hereinafter called Lake.) Stybr and Watson, who were principals on the injunction bond, are non-residents of this state. The surety is insolvent. In this suit, the Caflisch Lumber Company (hereinafter called Caflisch), seeks to have the damages (not questioned) occasioned by the injunction, to the amount of the penalty of the bond, adjudged a lien against the land conveyed. The circuit court so found, but gave priority over Caflisch to an alleged equitable lien in favor of Evans Manor Land Company (hereinafter called Evans) for $55,333.33, and further gave parity with Caflisch to another claim of Evans for $13,775.08.

There is no conflict about the controlling events. Evans and S. B. Weiler were heavy creditors of Kendall Lumber Company, whose property was to be sold in a creditor's suit. Evans, Weiler and J. Stybr agreed prior to the sale as follows: (a) Stybr would pay Evans cash for all of its claims against the Lumber Company (except one small claim) ; (b) the three would bid jointly at the sale and if successful, Evans would furnish one-third of the purchase price; in such case the title should be taken in the names of Thomas Watson (an executive officer of Evans) and Dr. C. J. Stybr (a brother of J. Stybr) who should hold it as trustees for and convey the same to a new corporation to be organized by the contracting parties; (d) the capital stock of this corporation should have nominal or no par value or should be fully paid and non-assessable, of which Evans should have 15% and Weiler and J. Stybr jointly 85%, but Evans should designate one-half of the directors and offi-

cers, and Weiler and Stybr the other half; the corporation, as the contract stated, should "issue its notes secured by vendor's lien for the amount of the new money which it has advanced to acquire title to the property at the commissioner's sale. (This covenant is confusing since the new corporation was not formed until after the sale, and had no actual money with which to acquire the property.) The plan was consummated as arranged; the three parties bid in the property at the sale for the sum of $166,000.00; Evans paid the sale's commissioner $55,-333.34; Evans also paid on the purchase price additional sums amounting to $36,007.10 (making in all $91,340.44 which it advanced); Evans, Weiler and J. Stybr "receipted to the commissioner for the balance of the purchase price"; and the property was conveyed to Watson and Dr. Stybr. Shortly afterwards, Lake, the new corporation, was organized, having capital stock of the par value of $10,000.00. This stock was divided, and Lake's officers and directors were elected, all in strict conformity with the above agreement. The directors (among whom were Watson, Dr. Stybr and Weiler) resolved to have legal proceedings instituted against Caflisch. This was done by Watson and Dr. Stybr, who had not then conveyed to Lake. When the instant suit was brought, a *lis pendens* was filed by Caflisch. Afterwards, Lake executed a deed of trust on its property to secure Evans $85,699.18, the balance unpaid on its advancements.

Equity jurisdiction is questioned. The original bill proceeded on the theory that the deed from Watson and Dr. Stybr to Lake was a fraud on Caflisch. Appellees contend that this theory is not tenable because the deed was executed in performance of the trust agreement, without any reference to Caflisch, and that its manager was informed by Weiler of the trust. This contention overlooks the fact that the injunction bill, sworn to by Dr. Stybr, averred that he and Watson, in purchasing the property, "acted for themselves, and the said Evans Manor Land Company and Samuel B. Weiler" who "are beneficially interested in said property by and through the arrangement existing between themselves and these

plaintiffs." Since the statement of Weiler to Caflisch was unverified, we are of the opinion that Caflisch was warranted in discarding it in favor of the verified allegation of the bill. We are further of opinion that under the circumstances the deed to Lake tended to hinder and delay Caflisch in recovering its damages caused by the injunction, and therefore, under Code, 40-1-1, was subject to attack by Caflisch in a court of equity. *Halfpenny* v. *Tato*, 65 W. Va. 296, 64 S. E. 28. After appellees had answered, setting up the trust agreement, Caflisch filed an amended bill, which, without abandoning the theory of the original bill, claimed that the status under that agreement, if true, constituted an added reason for recovery.

A number of issues are briefed, but we see no useful purpose in discussing them seriatim. We resolve this cause in the following direct manner: (1) Watson and Dr. Stybr were recognized specifically as trustees for Lake by its board of directors; the injunction suit was instigated by its board; the suit was intended to preserve the trust estate; consequently, the liabilities incurred by Watson and Dr. Stybr in that litigation are ultimately chargeable to the estate. The injuries caused Caflisch by that suit constitutes such a liability. "When a trustee incurs an obligation in discharging the trust, the person to whom the obligation is due may satisfy it out of the trust estate." *Frost* v. *Thompson*, 219 Mass. 360, 106 N. E. 1009. Accord: *Darby* v. *Gilligan*, 37 W. Va. 59, 16 S. E. 507; *Cory Bros. & Co.* v. *U. S.*, 43 F. (2d) 589; *Gould* v. *Gould*, 126 Misc. 54, 213 N. Y. S. 286; Perry on Trusts (7th Ed.), sec. 894. (2) The non-residency of Watson and Stybr, principals on the injunction bond, and the insolvency of their surety are additional reasons for Caflisch proceeding in equity directly against the trust estate. *Austin* v. *Parker*, 317 Ill. 348, 148 N. E. 19; *Miller* v. *Herzog*, 148 N. Y. S. 945; Restatement, Trusts, secs. 267, 268. (3) Lake is merely a corporate simulacrum of Evans, Weiler and J. Stybr, appropriated to their special service, and bound thereto by their prearranged allocation of its stock and officers. Under

such circumstances, Lake's corporate entity may be disregarded in order to prevent Evans, as one of the triumvirate, from impressing equitable liens in its favor upon Lake to the disadvantage of Caflisch, a stranger. *U. S.* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. 247, 255; *Tynes* v. *Shore*, 117 W. Va. 355, 359, 185 S. E. 845. (4) The *lis pendens* of this suit prevented the subsequent trust deed of Lake in favor of Evans from affecting Caflisch in any possible manner.

Watson and Dr. Stybr appeared voluntarily and filed answers; whereupon, a judgment was decreed against them personally for the penalty of the injunction bond. Since the bill prayed for no relief against them, that judgment will be set aside. Both the parity given Evans with Caflisch, and the priority given Evans over Caflisch will be set aside. In other respects, the decrees are affirmed, and the cause remanded.

*Affirmed in part; reversed in part; remanded.*